1
2
3
4
5                   UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7

8  CHRISTINE CHANG, *et al.*,                    No. C-07-4005 EMC

9          Plaintiffs,

10     v.                                         **ORDER GRANTING DEFENDANTS'
                                                  MOTIONS TO DISMISS OR, IN THE
11 ROCKRIDGE MANOR CONDOMINIUM, *et*             ALTERNATIVE, FOR A MORE
   *al.*,                                        DEFINITE STATEMENT; AND
                                                  GRANTING DEFENDANT'S MOTION
12                                                FOR SUMMARY JUDGMENT**
           Defendants.
13 _____/          **(Docket Nos. 17, 28, 59, 63, 67, 88)**

14

15         Plaintiffs are Christine Chang and her son Eric Sun.  They have sued various entities and

16 individuals affiliated with the Rockridge Manor Condominium and the University of California,

17 Berkeley ("University").  Currently pending are multiple motions to dismiss or, in the alternative,

18 for a more definite statement and one motion for summary judgment.  Having considered the parties'

19 briefs and accompanying submissions, as well as the oral argument of counsel and Ms. Chang, the

20 Court hereby **GRANTS** Defendants' motions.

21              **I.      FACTUAL & PROCEDURAL BACKGROUND**

22         In their complaint, Plaintiffs allege as follows.

23         From 1991 to 2003, Plaintiffs lived in the Rockridge Manor Condominium.  *See* Compl. ¶

24 24.  At the time that Plaintiffs moved into the Condominium, Mr. Sun was only eleven years old.

25 *See* Compl. ¶ 24.

26         During the relevant period, Eva Ammann was the manager of the Rockridge Manor

27 Homeowners Association and Charles Blakeney was the president of the Board of Directors of the

28 Homeowners Association.  *See* Compl. ¶¶ 8-9.  In 1997, Ms. Ammann and several Board members

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    invited Ms. Chang to serve on the Board. *See* Compl. ¶ 27. Ms. Chang served on the Board from

2    1997 to April 2000. *See* Compl. ¶ 27. During that time, Ms. Chang realized that Ms. Ammann and

3    the Board were embezzling from and extorting the Homeowners Association. *See* Compl. ¶ 28. Ms.

4    Chang decided not to run for re-election in April 2000 because she disagreed with the embezzlement

5    and extortion and because she was treated poorly by the other Board members -- *e.g.*, she was yelled

6    at or voted down if she made objections or suggestions. *See* Compl. ¶¶ 30-31, 35. The new Board

7    member who replaced her ended up "fighting furiously" against the other Board members and Ms.

8    Ammann, and so these Board members and Ms. Ammann pressured Ms. Chang to serve on the

9    Board again in place of the new Board member. Compl. ¶ 36. Ultimately, these Board members

10   and Ms. Ammann began a campaign of persecution against Plaintiffs for the purpose of "continuing

11   their embezzlement and extortion," Compl. ¶ 39, and to retaliate against Ms. Chang for not serving

12   on the Board . *See* Compl. ¶¶ 46, 49, 54

13        Most notably, in September 2000, Ms. Chang was on vacation, leaving Mr. Sun at the

14   Condominium, and Ms. Ammann -- aware of this fact -- called social services and the police,

15   claiming that Mr. Sun was dangerous and had a gun in his possession. *See* Compl. ¶ 41. Ms.

16   Ammann knew that Plaintiffs did not have a gun on the premises, that Mr. Sun was not a violent

17   person, and that he had mental and physical disabilities. *See* Compl. ¶ 42. As a result of Ms.

18   Ammann's actions, the police officers forced their way into the unit and restrained Mr. Sun, and Mr.

19   Sun was locked up in a psychiatric institution. *See* Compl. ¶¶ 41-42. Ms. Ammann told Mr. Sun

20   that "she was merely executing the Board of Directors' [sic] order." Compl. ¶ 44. Similarly, Mr.

21   Blakeney, the president of the board, told Ms. Chang that Ms. Ammann had been following an

22   instruction by the Board to call social services because the Board was concerned about him. *See*

23   Compl. ¶ 48. Mr. Blakeney further sent a letter of all homeowners of the Condominium, stating that

24   "the Board was taking actions against Plaintiffs to protect all the homeowners." Compl. ¶ 59.

25        Subsequently, Plaintiffs filed a complaint against (it appears) Ms. Ammann, the Board, and

26   the Homeowners Association. *See* Compl. ¶¶ 61, 67. On December 10, 2001, the Homeowners

27   Association issued a statement to all of the homeowners in the Condominium, notifying them of

28   Plaintiffs' lawsuit. *See* Compl. ¶ 61. On that same day, one of the Board members (now deceased)

1    caused one of the homeowners, Constance Pepper Celaya, to assault and batter Plaintiffs.[1]  *See*

2    Compl. ¶ 62.  Thereafter, Plaintiffs filed suit against Ms. Celaya as well.  *See* Compl. ¶ 71; *see also*

3    Univ. Defs.' RJN, Ex. A (lawsuit filed on 4/3/02).  Ms. Celaya perjured herself in her answer and

4    cross-complaint against Plaintiffs.  *See* Compl. ¶ 74.  She also lied during her deposition.

5    *See* Compl. ¶ 81.

6         Ms. Ammann, the Homeowners Association, and the Board corrupted each of the five

7    different attorneys who represented Plaintiffs.  *See* Compl. ¶ 65.  The attorneys did all that they

8    could to absolve Ms. Ammann, the Homeowners Association, and the Board -- as well as Ms.

9    Celaya in the other lawsuit -- of liability.  *See, e.g.*, Compl. ¶¶ 72, 102, 117.

10        Plaintiffs' fourth attorney was Pamela Zimba.  *See* Compl. ¶ 87.  Ms. Zimba was hired in

11   part to consolidate Plaintiffs' two lawsuits (one against Ms. Ammann, the Homeowners Association,

12   and the Board and the other against Ms. Celaya) but never did so.  *See* Compl. ¶¶ 87-88.  Ms. Zimba

13   waited until only a few weeks before the trial in the lawsuit against Ms. Celaya to tell Plaintiffs that

14   the case was going to trial separately.  *See* Compl. ¶ 89.  When Ms. Chang objected, "[Ms.] Zimba

15   induced Plaintiffs to go to trial by promising to obtain $5000 in settlement or [a] $100,000 judgment

16   award in trial."  Compl. ¶ 89.  Ms. Zimba then told Plaintiffs that, if Mr. Sun were to take the stand

17   in the case, it would greatly increase the likelihood of prevailing in the case.  *See* Compl. ¶ 90.

18   However, "[b]y persuading [Mr.] Sun to take the stand, [Ms.] Zimba eliminated a jury trial" as she

19   knew that, because of his mental problems, Mr. Sun "could not face a full court with [a] jury and

20   audience."  Compl. ¶ 91.  During the trial in August 2004, Ms. Zimba turned on Plaintiffs and

21   framed Ms. Chang as the assailant rather than Ms. Celaya.[2]  *See* Compl. ¶ 92.  In addition, Ms.

22   Zimba failed to seek out and present key evidence in support of Plaintiffs' case (*e.g.*, the testimony

23

24         [1] In their opposition to the Homeowners Association's motions to dismiss and for summary
25   judgment, Plaintiffs claim that Ms. Celaya was motivated to beat them up because the Board had
     announced their lawsuit against the Homeowners Association, thereby causing "dues to go up."  Opp'n
26   at 5.

27         [2] In their opposition to the Homeowners Association's motions, Plaintiffs claim that Ms. Zimba
     "framed Plaintiff Chang as the assailant by asking U.C. Berkeley Police Department Defendant
28   Constance Celaya leading questions" and "by avoiding clarifications of Plaintiff Sun being beatened up
     by assailant Celaya and contracted AMNESIA."  Opp'n at 8.

United States District Court

For the Northern District of California

1    of third parties, the testimony of doctors, Ms. Celaya's police offensive training records).  *See*

2    Compl. ¶¶ 97-98; *see also* Pls.' Ex. 1.2, at 93, 103, 110 (trial transcript in Celaya lawsuit) (Ms.

3    Celaya stating that she received about 20 years ago training on handling people in difficult situations

4    -- *e.g.*, how to retain female prisoners).  The judge presiding over the trial, Judge Castellanos,

5    conspired with Ms. Zimba to ensure that Ms. Celaya would prevail in the case -- apparently because

6    the judge was biased toward the University where her husband worked.  *See* Compl. ¶ 95; *see also*

7    Pls.' Opp'n, Ex. 1.2, at 42 (trial transcript in Celaya lawsuit) (judge stating on the record that "[m]y

8    husband works for the U.C. system" -- "[n]ot for U.C. Berkeley but for the University of California,

9    the president's office"; adding that "[h]e's in the audit department").

10          On August 11, 2004, a judgment was entered in the Celaya lawsuit, which stated that "the

11   Plaintiff(s) Christine Chang; Eric Sun take nothing by this action from the Defendant(s), Constance

12   Peppers Celaya and that said defendant(s) recover from the Plaintiff(s) $0.00 costs."  Univ. Defs.'

13   RJN, Ex. B (judgment).  Although this was the judgment, Plaintiffs claim that this was a judgment in

14   favor of Ms. Celaya that left open a remedy against Plaintiffs.  *See* Compl. ¶ 99.  According to

15   Plaintiffs, Ms. Zimba falsely told Plaintiffs that the judgment was a nonsuit "in order to botch the ten

16   days [sic] deadline to file [a] motion for a new trial after entry of judgment."  *See* Compl. ¶ 99.

17   Plaintiffs asked Ms. Zimba to appeal, but, to distract Plaintiffs, Ms. Zimba pressured Plaintiffs to

18   proceed with discovery in the lawsuit against Ms. Ammann, the Homeowners Association, and the

19   Board.  *See* Compl. ¶ 101.  Ms. Zimba had conspired with these Defendants to distract Plaintiffs

20   with discovery and also to schedule the trial of this case within only a month of the trial in the case

21   against Ms. Celaya.  *See* Compl. ¶¶ 102, 105, 107.  Ms. Zimba also pressured Plaintiffs to hire new

22   counsel in this second lawsuit.  *See* Compl. ¶ 105.  In fact, one month before the trial (which would

23   be about the time of the trial in the lawsuit against Ms. Celaya), Ms. Zimba told Plaintiffs to hire

24   Albert Coombes -- an attorney whom Ms. Zimba had consulted closely on the two cases -- or

25   otherwise she would stop representing them.[3]  *See* Compl. ¶ 109.

26   ─────────────────────

27          [3] In their opposition to the Homeowners Association's motions, Plaintiffs elaborate on why Ms. Zimba pressured them to hire Mr. Coombes. According to Plaintiffs, Ms. Zimba pressured them to hire

28   Mr. Coombes so that Plaintiffs would have to pay another retainer ($7,500 to Mr. Coombes) and enter a new retainer agreement (providing for a 33 1/3% cut for Ms. Zimba and Mr. Coombes).  *See* Opp'n

United States District Court

For the Northern District of California

1    As a result of all this pressure, Plaintiffs hired Mr. Coombes and then caved in and accepted

2    an induced low settlement from Ms. Ammann, the Homeowners Association, and the Board.  *See*

3    Compl. ¶¶ 108-09.

4    Immediately after the assault and battery by Ms. Celaya, Ms. Chang called the University

5    Police Department to file a complaint against Ms. Celaya, whom Plaintiffs describe as a University

6    Police Department Dispatcher.  *See* Compl. ¶¶ 19, 113; *see also* Pls.' Ex. 1.2, at 82 (trial transcript

7    in Celaya lawsuit) (Ms. Celaya stating that she is a public safety dispatcher).  Ms. Celaya's

8    "supervisor-friend" blocked the complaint.  *See* Compl. ¶ 119.  Thereafter, Ms. Chang went to the

9    University Police Department and met with Tom Klatt, whom Plaintiffs describe as the University

10   Police Department Manager.  *See* Compl. ¶ 115.  Mr. Klatt received Ms. Chang's complaint and

11   then, a few days later, left a voicemail with Ms. Chang, stating that the University Police

12   Department would not be taking any action.  *See* Compl. ¶ 115.

13   After Plaintiffs did not prevail in the lawsuit against Ms. Celaya, Plaintiffs took action to try

14   to appeal but, as noted above, they were distracted from the appeal by Ms. Zimba; furthermore, the

15   judge in the case managed to get the delivery of the trial transcript to Plaintiffs delayed "in order to

16   abolish the six months appeal deadline against Plaintiffs."  Compl. ¶ 120.

17   On May 18, 2005, Ms. Chang discovered that the "true judgment" in the Celaya case was not

18   a nonsuit but rather a judgment for Ms. Celaya, purportedly with a remedy available to her.  *See*

19   Compl. ¶ 123; *see also* Pls.' Opp'n, Ex. 2.5, at 5 (hearing transcript in Celaya lawsuit) (Ms. Chang

20   stating that "I didn't find out the true judgment until May 18th when the other case [against the

21   Homeowners Association, etc.] was concluded").  Because Plaintiffs were concerned that Ms.

22   Celaya might seek remedies against them, they moved to reverse the final judgment.  *See* Compl. ¶

23   124.  On September 16, 2005, Judge Castellanos stated that the motion was untimely and further

24   stated that there was insufficient evidence to support Plaintiffs' claims against Ms. Celaya.

25

26

27   at 9.  Plaintiffs contend that "Zimba and Coombes conspired to coerce the $7,500 retainer for Coombes
     and a new retainer agreement of 33 1/3% from damage award because they found out from the expert
28   forensic economists that Plaintiffs have over one million dollars damages."  Opp'n at 9.

**United States District Court**
For the Northern District of California

1    *See* Compl. ¶ 125; *see also* Univ. Defs.' RJN, Ex. C (denying Plaintiffs' motion to vacate or set

2    aside).

3       Although not entirely clear, it appears that Plaintiffs tried to serve a subpoena on the

4    University Police Department (actually, Ms. Harrison, the Chief of Police for the University Police

5    Department) in order to get evidence to support their motion to reverse the final judgment. *See*

6    Compl. ¶ 126; *see also* Pls.' Ex. 2.2 (subpoena, dated 8/18/05, to Ms. Harrison; served by certified

7    mail). However, Alan Kolling (described by Plaintiffs as the University Public Records

8    Coordinator), Susan Von Seeburg (described as the University General Counsel), and Victoria

9    Harrison (described as the University Police Department Chief) refused to respond to the subpoena.

10    *See* Compl. ¶ 127. These individuals conspired with Judge Castellanos to ensure that the subpoena

11    would not be answered. *See* Compl. ¶ 128.

12       It appears that, thereafter, Ms. Chang wrote to Robert Birgeneau, whom Plaintiffs describe as

13    the University Chancellor, to complain about the actions of the individuals above as well as the

14    conduct of Ms. Celaya. *See* Compl. ¶ 133. Mr. Birgeneau simply delegated his duties to his staff.

15    *See* Compl. ¶ 133.

16       Based on the above allegations, Plaintiffs assert the following causes of action: (1) violation

17    of Plaintiffs' constitutional rights protected by the Fourth, Fifth, Sixth, Seventh, and Fourteenth

18    Amendments, *see* 42 U.S.C. § 1983; (2) malicious prosecution/abuse of process; (3) negligence; (4)

19    fraud; and (5) conspiracy to defraud Plaintiffs and violate Plaintiffs' constitutional rights. Plaintiffs

20    appear to assert these claims against all Defendants.

21                              **II.**    **DISCUSSION**

22    A.    <u>Legal Standard</u>

23       Currently pending before the Court are the following motions: (1) the Rockridge Manor

24    Homeowners' Association motion for summary judgment; (2) the Rockridge Manor Homeowners'

25    Association motion to dismiss or, in the alternative, for a more definite statement; (3) Farmers

26    Insurance Exchange's motion to dismiss or, in the alternative, for a more definite statement; (4) Ms.

27    Zimba's motion to dismiss for failure to state a claim and for a more definite statement; (5) Mr.

28    Coombes' motion to dismiss for lack of subject matter jurisdiction and/or failure to state a claim or,

**United States District Court**

For the Northern District of California

1  in the alternative, for a more definite statement; and (6) the University Defendants' motion to

2  dismiss or, in the alternative, for a more definite statement.  These motions implicate the following

3  Federal Rules of Civil Procedure.

4        1.    <u>Rule 12(b)(1)</u>

5        Under Rule 12(b)(1), a party may move for lack of subject matter jurisdiction.  Under 28

6  U.S.C. § 1331, a federal court has subject matter jurisdiction "of all civil actions arising under the

7  Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Under 28 U.S.C. § 1367(a),

8  "in any civil action of which the district courts have original jurisdiction, the district courts shall

9  have supplemental jurisdiction over all other claims that are so related to claims in the action within

10  such original jurisdiction that they form part of the same case or controversy under Article III of the

11  United States Constitution."  28 U.S.C. § 1367(a).  A district court, however, "may decline to

12  exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

13  dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c).

14        2.    <u>Rule 12(b)(6)</u>

15        Under Rule 12(b)(6), a party may move to dismiss based on the failure to state a claim upon

16  which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule

17  12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of*

18  *Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  All material allegations of the complaint

19  are taken as true and construed in the light most favorable to the nonmoving party.  *See Cahill v.*

20  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).  "While a complaint attacked by a Rule

21  12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

22  provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

23  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

24  enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.

25  Ct. 1955, 1964-65 (2007).

26        3.    <u>Rule 12(e)</u>

27        Under Rule 12(e), a party may move for a more definite statement when a complaint is "so

28  vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

The motion "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e). Moreover, under Rule 9(b), if there is a claim for fraud, then "the circumstances constituting fraud . . . shall be stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

### 4.    Rule 56(c)

Finally, under Rule 56(c), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255. Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Although the bulk of the motions currently pending before the Court are motions to dismiss pursuant to Rule 12(b)(6) -- which, as noted above, focus on the complaint -- all parties, including Plaintiffs, have cited to and submitted evidence beyond the complaint. Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "In providing notice to the parties, 'a district court need only apprise the parties that it will look beyond the pleadings to extrinsic evidence and give them an opportunity to supplement the record.'" *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998).

**United States District Court**
For the Northern District of California

1    B.    <u>Rockridge Manor Homeowners Association</u>

2         Rockridge Manor Homeowners Association has filed two motions: (1) a motion to dismiss

3    or, in the alternative, for a more definite statement and (2) a motion for summary judgment.  The

4    Court shall address the latter motion first.

5         1.    <u>Motion for Summary Judgment</u>

6         In its motion for summary judgment, the Homeowners Association argues that there is no

7    genuine dispute of material fact that all claims against it must be dismissed because of the release

8    and covenant not to sue that Plaintiffs signed with the Homeowners Association in February 2005.

9    *See* Conroy Decl., Ex. F (release).  As part of the release, Plaintiffs dismissed with prejudice a state

10   law suit against various defendants, including the Homeowners Association, and agreed that they

11            hereby release and forever discharge releases of any and all claims,
             demands, actions, causes of action, lien claims, obligations, liabilities
12           of any nature whatsoever and damages, whether or not now known,
             suspected or claimed, including, without limitation court costs,
13           attorneys fees and other expenses which the plaintiffs' [sic] ever had,
             now have, or hereafter may have or claim to have against releases,
14           including any claims directly or indirectly arising out of the incidents
             and matters which are alleged by plaintiffs to have occurred on or
15           about September 20, 2000, and at all other times.

16   Conroy Decl., Ex. F at 2-3.  In addition, Plaintiffs stated that they

17            full understand and expressly waive their rights or benefits under
             Section 1542 of the Civil Code of California, which provides:
18
             A general release does not extend to claims which the creditor
19           does not know or suspect to exist in his favor at the time of
             executing the release, which if known by him must have
20           materially affected his settlement with the debtor.

21   Conroy Decl., Ex. F at 4.

22         In light of the release, the Court agrees with the Homeowners Association that summary

23   judgment is warranted.  In so ruling, the Court acknowledges Plaintiffs' contention that they were

24   fraudulently induced into signing the release by their attorneys (*i.e.*, Ms. Zimba and Coombes) who

25   were conspiring with the Homeowners Association to deprive her of her civil rights.  Even if as a

26   theoretical matter, fraud in the inducement could vitiate a release, the Court finds this argument

27   unavailing.

28

First, Plaintiffs' unilateral mistake in signing cannot render the release voidable unless the Homeowners Association had reason to know of the mistake or caused the mistake or unless the effect of the mistake is such that enforcement of the contract would be unconscionable. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 280-82 (2001). Plaintiff have failed to present any facts which gives rise to a genuine factual dispute as to this element.

Plaintiffs do allege that the Homeowners Association conspired with Plaintiffs' attorneys, thus implying the Homeowners Association had knowledge sufficient to vitiate the release. But as discussed in greater detail below in Section II.B.2.c., neither the allegations of the complaint nor any evidence presented by Plaintiffs are sufficient to establish a plausible conspiracy.

Moreover, the Court notes that the particular "evidence" Plaintiffs cite here is insufficient to establish such plausibility. Plaintiffs assert that there was a conspiracy because, *e.g.*, Ms. Zimba framed Ms. Chang as the assailant during the trial in the Celaya lawsuit, falsely told Plaintiffs that the judgment in the Celaya lawsuit was a nonsuit, and distracted Plaintiffs from appealing the judgment in the Celaya lawsuit by pressuring Plaintiffs to proceed with discovery in the lawsuit against Ms. Ammann, the Homeowners Association, and the Board. However, the transcript of the trial in the Celaya case, which the Court has reviewed, does not demonstrate Ms. Zimba "framed" her own client. As for the judgment in the Celaya case, whether it was improperly characterized as a "nonsuit" is immaterial to Plaintiffs' legal position. Finally, that Ms. Zimba proceeded with discovery in the second lawsuit in the immediate aftermath of the Celaya lawsuit was only to be expected since the trial in that case was upcoming. There is no evidence of a conspiracy sufficient to create genuine issue of fact.

Accordingly, the Court grants the Homeowners Association's motion for summary judgment. There is no genuine dispute of material fact that Plaintiffs' claims are barred by the release and covenant not to sue that Plaintiffs signed with the Homeowners Association (among others) in February 2005.

///

///

///

United States District Court

For the Northern District of California

2.      Motion to Dismiss

Although dismissal of Plaintiffs' lawsuit against the Homeowners Association is appropriate for the reasons stated above, the Court shall also address the Homeowners Association's motion to dismiss as there are independent reasons as to why dismissal is proper.

a.      Statute of Limitations

First, all of the claims asserted, except for the fraud claims, are barred by the statute of limitations.  Except for the fraud claims, the proper statute of limitations is two years.  *See* Cal. Code Civ. Proc. § 335.1 (providing for a two-year statute of limitations for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"); *Maheu v. CBS*, 201 Cal. App. 3d 662, 673 (1988) (noting that, "[i]n an action based on civil conspiracy, the applicable statute of limitations is determined by the nature of the action in which the conspiracy is alleged"); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (stating that the statute of limitations for a § 1983 claim is dictated by "the statute of limitations for personal injury actions in the forum state").  Plaintiffs filed the instant case on August 3, 2007.  Thus, with the two-year statute of limitations, the allegedly wrongful conduct by the Homeowners Association had to have occurred by August 3, 2005, in order to be actionable.

As is evident from Plaintiffs' complaint, the allegedly wrongful conduct by the Homeowners Association took place well before August 3, 2005.  For example, the incident in which Ms. Ammann called social services and the police (at the behest of the Board) took place in September 2000.  Other alleged persecution by Ms. Ammann, Mr. Blakeley, and the Homeowners Association would have to have ended by 2003, when Plaintiffs moved out of the Condominium.  As for the alleged conspiracy between the Rockridge Defendants and the other Defendants, that would have been over by late 2004 and early 2005 when the two state lawsuits were resolved.[4]  Notably, at the

---

[4] There was a bench trial in the lawsuit against Ms. Celaya in August 2004.  *See* Univ. Defs.' RJN, Ex. B (judgment).  The lawsuit against the Homeowners Association settled in February 2005. *See* Conroy Decl., Ex. F (release).  While there were proceedings in the Celaya lawsuit in September 2005, *see* Univ. Defs.' RJN, Ex. C (order), there is no sufficient allegation establishing that Ms. Ammann, Mr. Blakeley, or the Homeowners Association were conspiring with anyone at that point to do anything against Plaintiffs since the lawsuit against the Homeowners Association had settled.

**United States District Court**
For the Northern District of California

1    hearing, Plaintiffs could not make any allegation or point to any evidence of wrongful conduct by

2    the Homeowners Association on or after August 3, 2005.

3         Moreover, the Court takes note that evidence supplied by Plaintiffs themselves establishes

4    that their claims (except for the fraud claims) are barred by the statute of limitations.  That is, even if

5    there were a conspiracy between the Homeowners Association and Plaintiffs' attorneys, Plaintiffs

6    were clearly aware of the conspiracy well before August 3, 2005.  *See RK Ventures, Inc. v. City of*

7    *Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002) ("A statute of limitations under § 1983 . . . begins to

8    run when the cause of action accrues, which is when the plaintiffs know or have reason to know of

9    the injury that is the basis of their action."); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988)

10   ("Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or

11   should suspect that her injury was caused by wrongdoing . . . .").  For example, in a letter to Ms.

12   Zimba dated April 26, 2005, Ms. Chang charges her attorney with having "worked with the defense

13   attorney who stopped defendants from answering questions related to assault/battery case."  Pls.' Ex.

14   5.8, at 5 (letter, dated April 26, 2005); *see also id.* at 4 ("In the homeowners association case, I

15   believe you purpose[ful]ly covered up defendants' property crimes in embezzlement, aiding &

16   abetting in embezzlement, conspiracy against homeowners, [etc.]").  Subsequently, in a letter of

17   complaint to the California State Bar, dated June 4, 2005, Ms. Chang asserted that "Constance

18   Celaya and Mike Solomon [one of the Board members] were able to corrupt all our attorneys

19   sabotaging our complaints against the board of directors of homeowner association and Constance

20   Celaya's assault/battery."  Pls.' Ex. 5.9, at 2 (letter, dated June 4, 2005).  Similarly, in another letter

21   of complaint to the Bar, dated June 20, 2005, Ms. Chang claimed that Ms. Zimba and Mr. Coombes

22   "conspired in botching the Homeowners Association case . . . the same way as the assault/battery

23   case [against Ms. Celaya]."  Pls.' Ex. 5.91, at 1 (letter, dated June 20, 2005).

24        The Court therefore concludes that the statute of limitations bars all of the claims asserted

25   against the Homeowners Association, except for the fraud claims.

26              b.    Claims for Fraud and Conspiracy to Defraud

27        While the fraud claims against the Homeowners Association have a three-year statute of

28   limitations and therefore may not be time barred in their entirety, *see* Cal. Code Civ. Proc. § 338(d)

**United States District Court**

For the Northern District of California

1    (providing for a three-year statute of limitations for "[a]n action for relief on the ground of fraud or

2    mistake"), they should nevertheless be dismissed for failure to comply with Federal Rule of Civil

3    Procedure 9(b), which provides that, "[i]n alleging fraud or mistake, a party must state *with*

4    *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9 (b) (emphasis

5    added). What this means is that allegations of fraud must be "specific enough to give defendants

6    notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

7    defend against the charge and not just deny that they have done anything wrong." *Neubronner v.*

8    *Milken*, 6 F.3d 666, 671 (9th Cir. 1993). "A pleading is sufficient under Rule 9(b) if it identifies the

9    circumstances constituting fraud so that the defendant can prepare an adequate answer from the

10    allegations. The complaint must specify such facts as the times, dates, places, benefits received, and

11    other details of the alleged fraudulent activity." *Id.* at 671-72. "[M]ere conclusory allegations of

12    fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

13          In the instant case, the complaint lacks the specificity required by Rule 9(b) to give the

14    Homeowners Association notice of the specific misconduct alleged to constitute the fraud so that it

15    can defend itself against the charge. Certainly, the complaint fails to identify facts such as the times,

16    dates, and places of the alleged fraud. In fact, the Court does not discern where in the complaint

17    Plaintiffs have alleged any false representation, concealment, or nondisclosure by the Homeowners

18    Association. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) ("The

19    elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure);

20    (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable

21    reliance; and (5) resulting damage."). The fact that the Association allegedly concealed its

22    conspiracy with the other Defendants from Plaintiffs does not mean that Plaintiffs thereby have a

23    cause of action for fraud -- otherwise all conspiracies would be frauds. The concealment of the

24    conspiracy is only relevant to the issue of when Plaintiffs' claims related to the conspiracy would

25    accrue. *See Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007) ("A defendant's

26    fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling

27    will last as long as a plaintiff's reliance on the misrepresentations is reasonable."). No specific

28    fraudulent misrepresentation is alleged.

1    Moreover, the claim for conspiracy to defraud is deficient because, for the reasons discussed

2  below, Plaintiffs have failed to allege plausible grounds for the alleged conspiracy.

3            c.    Claim for Conspiracy to Violate Civil Rights

4    For the reasons discussed above, Plaintiffs' claim for conspiracy to violate their civil rights is

5  barred by the statute of limitations. However, even if this hurdle could be overcome, Plaintiffs have

6  failed to state a claim for conspiracy.

7    As noted above, in *Bell Atlantic*, the Supreme Court explained that, "[w]hile a complaint

8  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

9  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

10  conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual

11  allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127

12  S. Ct. at 1964-65. More specifically, there must be "plausible grounds" to support a claim for relief.

13  *Id.* at 1965. Where allegations of a conspiracy are merely "conceivable" rather than "plausible," the

14  claim must be dismissed. *Id.* at 1974.

15    In the case at bar, Plaintiffs have failed to articulate even a conceivable basis for conspiracy,

16  let alone a plausible one. Plaintiffs' complaint asserts in essence that there was a massive

17  conspiracy involving the Homeowners Association, its insurer, the five attorneys retained by

18  Plaintiffs, the University and its employees, and a Superior Court judge to deprive Plaintiffs of their

19  right to a fair trial in the two state court lawsuits (*i.e.*, the lawsuit against Ms. Celaya and the lawsuit

20  against Ms. Ammann, Mr. Blakeley, and the Homeowners Association). Such a far reaching

21  fantastic conspiracy is hardly plausible on its face, but in any event, Plaintiffs fail to allege any

22  specific facts which establishes a plausible claim. The implausibility of their conspiracy allegation

23  is underscored by Plaintiffs' assertion that all of their attorneys were involved in the conspiracy, in

24  particular, the two Attorney Defendants sued herein, Ms. Zimba and Mr. Coombes. Plaintiffs

25  contend that, as part of the conspiracy, the two Attorney Defendants conspired with the

26  Homeowners Association and others to turn the suit against Ms. Celaya against her and pressured

27  Plaintiffs into accepting a low settlement from the Homeowners Association to resolve the second

28  state court lawsuit. However, that her own attorneys would have so conspired makes no logical

United States District Court

For the Northern District of California

1    sense since this would have been against the attorneys' own economic interest.  According to

2    Plaintiffs, the attorneys forced Plaintiffs to enter a new retainer agreement that would give them 33

3    1/3% of any damage award.  It makes no sense why the attorneys would undermine cases in which

4    they had an economic interest.  Opp'n at 9.

5           As a final point, it is worth noting that, at the hearing, Plaintiffs claimed that, based on their

6    inability to attract counsel for this case, the massive conspiracy against them had spread even further

7    to include a bar association referral service.  Once again, this demonstrates that Plaintiffs' claim of

8    conspiracy is ultimately nothing more than speculation.  Indeed, not only does the conspiracy

9    allegation fall far short of *Bell Atlantic*, it is patently fanciful and insubstantial.  *See Rice v. U.S.*

10   *Supreme Court*, 2003 U.S. Dist. LEXIS 22860 (N.D. Cal. 2003) at *2-3 (court may dismiss under

11   Rule 12(b)(6) if complaint is "patently insubstantial"); *Bureerong v. Uvawas*, 922 F. Supp. 1450,

12   1462 (C.D. Cal. 1996) (court need not accept as true "unreasonable inferences, unwarranted

13   deductions of fact, or conclusory legal allegations" in ruling on 12(b)(6) motion).  *Cf. Neitzke v.*

14   *Williams*, 490 U.S. 319, 328 (1989) (28 U.S.C. § 1915 gives a court "the unusual power to pierce the

15   veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

16   clearly baseless" -- *e.g.*, "fantastic or delusional scenarios" in cases filed *in forma pauperis*).

17                  d.    <u>Section 1983 Claim</u>

18          Even if Plaintiffs adequately stated a claim for relief for conspiracy to violate civil rights, a

19   further problem for Plaintiffs (aside from the statute-of-limitations problem) is their failure to state a

20   claim that their civil rights were violated in the first place.  In their complaint, Plaintiffs conclusorily

21   assert that their rights were violated pursuant to the Fourth, Fifth, Sixth, Seventh, and Fourteenth

22   Amendments, but none of the misconduct alleged in the complaint constitutes a violation of any of

23   these provisions.  For example:

24          (1)    The Fourth Amendment protects against unreasonable searches and seizures.  The

25   only search or seizure referred to in the complaint was the search of Plaintiffs' condominium unit in

26   September 2000 when Ms. Ammann called the police and social services.  However, that action of

27   Ms. Ammann does not make her a state actor who may be sued under § 1983.  *See, e.g., Hughes v.*

28   *Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) ("[P]rivate parties are not state actors when they merely

**United States District Court**
For the Northern District of California

1  call on the law for assistance, even though they may not have grounds to do so; 'there must be a

2  conspiracy, an agreement on a joint course of action in which the private party and the state have a

3  common goal.'"); *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("[M]erely

4  complaining to the police does not convert a private party into a state actor."); *Carey v. Continental*

5  *Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987) ("Gilbert's complaining about Carey's presence

6  to a Tulsa police officer who, acting within the scope of his statutory duties, arrested Carey [for

7  trespassing] after questioning him, does not, without more, constitute state action for which Gilbert

8  can be held responsible.").

9         (2)     The Fifth Amendment's due process clause is applicable only to the federal

10 government, not the state. *See Gerena v. Puerto Rico Legal Services, Inc.*, 697 F.2d 447, 449 (1st

11 Cir. 1983) ("The due process clause of the fifth amendment . . . applies to actions of the federal

12 government . . . ."); *Knoetze v. U.S. Dep't of State*, 634 F.2d 207, 211 (5th Cir. 1981) ("[F]ifth

13 amendment protection attaches only when the federal government seeks to deny a liberty or property

14 interest."); *Hester v. Lowndes County Comm'n*, No. 2:06cv572-WHA (WO), 2006 U.S. Dist. LEXIS

15 63084, at *9 (M.D. Ala. Sept. 1, 2006) ("[T]he Fifth Amendment's Due Process Clause applies only

16 to the federal government, not to state governments and state or local officials."); *Hewes v. Rhode*

17 *Island Dep't of Corr.*, No. 00-205 S, 2003 U.S. Dist. LEXIS 3256, at *10 (D.R.I. Feb. 11, 2003)

18 ("The Fifth Amendment due process clause 4 applies to the actions of the federal government and its

19 agents, and not the state government or its agents."); *Learnard v. Inhabitants of Van Buren*, 164 F.

20 Supp. 2d 35, 41 n. 3(D. Me. 2001) ("The Fifth Amendment Due Process Clause applies to the

21 federal government rather than a state government . . . ."); *Basile v. Elizabethtown Area Sch. Bd. of*

22 *Sch. Dirs.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999) ("The due process clause of the Fifth

23 Amendment is limited to acts of the federal government and has no application to state government

24 actions.").  Plaintiffs' complaint contains no allegations against the federal government or a federal

25 government official.

26        (3)     The Sixth Amendment provides for the right to effective assistance of counsel but it

27 applies only for criminal cases, not civil cases. *See Pokuta v. TWA*, 191 F.3d 834, 840 (7th Cir.

28 1999) ("[T]he well-settled general rule is that there is no constitutional or statutory right to the

United States District Court

For the Northern District of California

1   effective assistance of counsel in civil cases."); *United States v. Bodre*, 948 F.2d 28, 37 n.7 (1st Cir.

2   1991) ("It is well-settled that the Sixth Amendment right to effective assistance of counsel applies

3   only to critical stages of criminal prosecutions."); *see also Anderson v. Sheppard*, 856 F.2d 741,

4   747-48 (6th Cir. 1988) ("'A criminal defendant's right to counsel arises out of the sixth amendment,

5   and includes the right to appointed counsel when necessary.'  In contrast, '[a] civil litigant's right to

6   retain counsel is rooted in fifth amendment notions of due process; the right does not require the

7   government to provide lawyers for litigants in civil matters.'").  Plaintiffs had only civil lawsuits in

8   state court.

9          (4)     The Seventh Amendment provides for the right to a jury trial.  Plaintiffs apparently

10   decided to waive their right to a jury trial in the Celaya lawsuit based on advice by Ms. Zimba.

11   They were allegedly told by Ms. Zimba, if Mr. Sun were to "represent himself in the trial to take the

12   stand, it would greatly increase the opportunity to win the case and judgment award."  Compl. ¶ 90.

13   The problem for Plaintiffs is that the Seventh Amendment does not apply to state court proceedings.

14   The Celaya lawsuit was a state court proceeding.  *See Gasperini v. Center for Humanities, Inc.*, 518

15   U.S. 415, 432 (1996) ("The Seventh Amendment . . . governs proceedings in federal court, but not in

16   state court . . . ."); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1488 (5th Cir. 1992)

17   ("'T]he 7th Amendment applies only to proceedings in courts of the United States, and does not in

18   any manner whatever govern or regulate trials by jury in state courts, or the standards which must be

19   applied concerning the same.'"); *R.J. Reynolds Tobacco Co. v. Bonta*, 272 F. Supp. 2d 1085, 1110-

20   11 (E.D. Cal. 2003) ("It is established that the right to a jury trial in civil cases under the Seventh

21   Amendment is not among those provisions of the Bill of Rights that have been made applicable to

22   the states through the Fourteenth Amendment.").

23          (5)     As for the Fourteenth Amendment, there are no allegations supporting a violation of

24   the equal protection clause.  Nor is it clear that there is any violation of due process based on the

25   allegations in the complaint.  Although, arguably, Plaintiffs' complaint suggests that Plaintiffs'

26   rights to due process were violated because Defendants' actions -- *i.e.*, conspiring together --

27   deprived them of the right to a fair trial in both of the state lawsuits, state action is required for a §

28   1983 claim.  While a conspiracy among private and state actors can give rise to state action, *see*

17

United States District Court

For the Northern District of California

1   *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002) (noting that "[a] § 1983 plaintiff . . . must

2   show that a defendant's actions are 'fairly attributable' to the government" and that "[a] private

3   individual's action may be 'under color of state law' where there is 'significant' state involvement in

4   the action" -- *e.g.*, where a private individual and state officials "'have acted in concert in effecting a

5   particular deprivation of constitutional rights'"), and Plaintiffs have alleged a conspiracy involving

6   private and state actors (*e.g.*, the University or the presiding judge in the Celaya lawsuit), for the

7   reasons stated above, the conspiracy claim as alleged is neither conceivable nor plausible and is

8   subject to dismissal under *Bell Atlantic*.

9             e.     Claims for Malicious Prosecution, Abuse of Process, and Negligence

10          Finally, with respect to the remaining state law claims for malicious prosecution, abuse of

11  process, and negligence, even if there were no statute-of-limitations bar, Plaintiffs have failed to

12  state a claim for relief.

13          "To prevail on a malicious prosecution claim, the plaintiff must show that [a] prior action (1)

14  was commenced by or at the direction of the defendant and was pursued to a legal termination

15  favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with

16  malice." *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 292 (2006). Plaintiffs have failed

17  to state a claim for malicious prosecution because they have not alleged that the Homeowners

18  Association ever initiated any lawsuit against Plaintiffs.

19          "The common law tort of abuse of process arises when one uses the court's process for a

20  purpose other than that for which the process was designed." *Rusheen v. Cohen*, 37 Cal. 4th 1048,

21  1056 (2006). "To succeed in an action for abuse of process, a litigant must establish that the

22  defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act

23  in the use of the process not proper in the regular conduct of the proceedings." *Id.* at 1057.

24  Plaintiffs have failed to state a claim for abuse of process because they have not even identified what

25  state court process was used by the Homeowners Association with an ulterior motive.

26          "The elements of a cause of action for negligence are commonly stated as (1) a legal duty to

27  use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach

28  and the resulting injury; and (4) actual loss or damage." *Ahern v. Dillenback*, 1 Cal. App. 4th 36, 42

United States District Court
For the Northern District of California

(1991). Plaintiffs have failed to state a claim for negligence as they have only made a conclusory allegation of a duty owed to them by the Homeowners Association. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) (noting that a legal "duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship"). No basis for imposing such a duty is alleged. Furthermore, Plaintiffs have failed to explain how that duty was breached by the Association.

C.     Farmers Insurance Exchange

Farmers Insurance Exchange has moved to dismiss or, in the alternative, for a more definite statement. The Court concludes that dismissal is appropriate for the following reasons.

First, Plaintiffs have failed to allege in the complaint any wrongdoing by Farmers Insurance. Plaintiffs appear to have sued Farmers Insurance simply on the basis that it was the insurance company for the Homeowners Association during the relevant period. *See* Compl. ¶ 10. *But see* Opp'n at 3 (suggesting that Farmers Insurance conspired with the Rockridge Defendants and Plaintiffs' attorneys to "sabotage" Plaintiffs' lawsuits).

But even if Farmers Insurance had engaged in wrongdoing by being part of the grand conspiracy against Plaintiffs,[5] the two-year statute of limitations would be a bar against all claims asserted against the insurance company, except for the fraud claims. Farmers Insurance's involvement with Plaintiffs was over by around February 2005, when the state case against the Homeowners Association was settled. *See* Conroy Decl., Ex. F (release).

As to the remaining fraud claims, Plaintiffs have failed to meet the particularity requirement of Rule 9(b). In addition, the claim for conspiracy to defraud is inadequate as Plaintiffs have failed to allege plausible grounds for any conspiracy sufficient under *Bell Atlantic*. The conspiracy claim against Farmers Insurance Exchange is dismissed with prejudice since the conspiracy allegations are so implausible and fantastic, they cannot possibly be cured by amended allegations. The other

---

[5] At the hearing, Plaintiffs suggested that Farmers Insurance had engaged in wrongdoing by hiring the defense attorneys who coerced her into settlement with the Homeowners Association. Plaintiffs fail to cite any authority for the proposition that the mere hiring of defense counsel establishes actionable wrongdoing by the insurer.

United States District Court

For the Northern District of California

1    claims with the exception of the fraud claim are also dismissed with prejudice.  The fraud claim is

2    dismissed without prejudice.

3    D.    Attorney Defendants

4          The two Attorney Defendants are Ms. Zimba and Mr. Coombes.  Ms. Zimba has moved to

5    dismiss for failure to state a claim and for a more definite statement; Mr. Coombes has moved to

6    dismiss for lack of subject matter jurisdiction and/or failure to state a claim or, in the alternative, for

7    a more definite statement.

8          Similar to above, all of the claims except for the fraud claims are barred by the two-year

9    statute of limitations.  Indeed, actions against attorneys for wrongful acts or omissions other than

10   actual fraud are subject to a limitations period of one year after discovery.  CCP § 340.6(a).  As the

11   alleged wrongdoing of her attorneys was apparent to Plaintiffs by August 2005, as noted above, any

12   malpractice claim is time-barred.  Moreover, for the reasons discussed in Part II.B.2.c-e (regarding

13   conspiracy, § 1983, state torts), Plaintiffs have failed to state a claim for relief with the exception of

14   the negligence claims.  For the negligence claim, the Court acknowledges that Plaintiffs have

15   adequately alleged a legal duty -- *i.e.*, a special relationship between the attorneys and Plaintiffs as

16   their clients.  However, Plaintiffs have not adequately explained how that duty was breached.  In any

17   event, as noted above, the negligence claim is barred by the statute of limitations.

18         As for the fraud claims, the Court dismisses the claim for conspiracy to defraud because of

19   insufficient allegations of conspiracy as noted above.  As to the remaining direct claim for fraud,

20   Ms. Zimba seeks only a more definite statement.  Given the particularity requirement of Rule 9(b),

21   the Court grants the request.  Plaintiffs shall provide a more definite statement as to the basis of their

22   claim for fraud.  In particular, they must specify such facts as the times, dates, and places of the

23   fraud, the benefits received by Ms. Zimba, and other details of the alleged fraudulent activity.  The

24   allegations of fraud must be "specific enough to give [Ms. Zimba] notice of the particular

25   misconduct which is alleged to constitute the fraud charged so that [she] can defend against the

26   charge and not just deny that [she has] done anything wrong."  *Neubronner*, 6 F.3d at 671.

27         As for the direct fraud claim against Mr. Coombes, Mr. Coombes does seek dismissal (and

28   not just a more definite statement).  The Court finds that dismissal is warranted, again on the basis of

**United States District Court**

For the Northern District of California

1   Rule 9(b).  Notably, at the hearing, Plaintiffs could not cite any fraudulent statement by Mr.

2   Coombes, simply relying on the theory that he was Ms. Zimba's superior.  This dismissal shall be

3   without prejudice.

4          For the reasons stated above, the conspiracy claims against the Attorney Defendants are

5   dismissed with prejudice as are § 1983 claims and non-fraud state tort claims.  As to the fraud claim

6   against Ms. Zimba, Plaintiffs shall file a more definite statement.  The fraud claim against Mr.

7   Coombes is dismissed without prejudice.

8   E.     University Defendants

9          Finally, the University Defendants move to dismiss or, in the alternative, for a more definite

10  statement.

11         Once again, for the nonfraud claims, the two-year statute of limitations is a bar to

12  any claim based on conduct of the University employees that occurred prior to August 3, 2005.  This

13  includes the alleged assault by Ms. Celaya, and the University employees' failure to discipline Ms.

14  Celaya for the alleged assault after Ms. Chang made complaints about Ms. Celaya's behavior in the

15  immediate aftermath of the alleged assault.  The only conduct that occurred within the statute of

16  limitations (*i.e.*, after August 3, 2005) appears to be (1) the University employees' failure to respond

17  to the subpoena that Plaintiffs served on Ms. Harrison (the Chief of Police for the University Police

18  Department) in the attempt to get evidence to support their motion to reverse the final judgment, *see*

19  Compl. ¶ 126; *see also* Pls.' Opp'n, Ex. 2.2 (subpoena, dated 8/18/05, to Ms. Harrison; served by

20  certified mail) and (2) the conspiracy among Mr. Kolling (the University Public Records

21  Coordinator), Ms. Von Seeburg (described as the University General Counsel), and Ms. Harrison --

22  along with Judge Castellanos – to ensure that the subpoena would not be answered.  *See* Compl. ¶

23  128 ("These U.C. Berkeley Staff conspired with Judge Castellanos to fraudulently defraud against

24  Plaintiffs Chang and Sun's subpoena.").

25  ///

26  ///

27  ///

28  ///

**United States District Court**

For the Northern District of California

1    However, Plaintiffs have failed to show that such conduct constitutes a constitutional

2    violation (*i.e.*, a § 1983 claim).[6]  Moreover, such conduct does not give rise to a claim for malicious

3    prosecution (the University employees did not initiate a lawsuit against Plaintiffs) or a claim for

4    negligence (there is only a conclusory allegation of a legal duty owed by the University employees

5    to Plaintiffs).  As for abuse of process, Plaintiffs have failed to allege that the University employees

6    "(1) contemplated an ulterior motive in using the [court] process, and (2) committed a willful act in

7    the use of the process not proper in the regular conduct of the proceedings." *Rusheen*, 37 Cal. 4th at

8    1057.  Finally, for the three state law claims, the litigation privilege applies. *See Foothill Federal*

9    *Credit Union v. Superior Court*, 155 Cal. App. 4th 632 (2007) (holding that plaintiffs' claims against

10   defendants based on defendants' disclosure of documents in response to a subpoena in another case

11   were barred by the litigation privilege).  Although these claims appear fundamentally deficient, in

12   view of Plaintiffs' *pro se* status, they are dismissed without prejudice.

13   With respect to these nonfraud claims that are not time barred, both federal and state,

14   Eleventh Amendment immunity protects the University and the University employees in their

15   official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)

16   (noting that Eleventh Amendment immunity "applies . . . to state-law claims brought into federal

17   court under pendent jurisdiction").  For the remaining nonfraud claims against the University

18   employees in their individual capacities, the conspiracy claim fails because as noted above, Plaintiffs

19   have not alleged specific facts establishing plausible grounds for a conspiracy.  That Judge

20   Castellanos's spouse allegedly worked in the audit department of the University president's office

21   does not in and of itself make a conspiracy plausible, especially since Judge Castellanos directly

22   informed the parties, and did not conceal from them, her husband's affiliation.  As for the alleged

23

24

_____

25       [6] Because Plaintiffs have failed to do so, the University employees in their individual capacities
are also entitled to qualified immunity on the § 1983 claim.  As Plaintiffs cannot establish that the

26   alleged conduct violated the Constitution, Plaintiffs cannot *a fortiorari* show that Defendants violated
their "clearly established" constitutional rights. *See Spoklie v. Montana*, 411 F.3d 1051,1060 (9th Cir.

27   2005) ("State officials have qualified immunity from civil liability under § 1983 'insofar as their
conduct does not violate clearly established statutory or constitutional rights of which a reasonable

28   person would have known.'").

United States District Court

For the Northern District of California

1  conspiracy between the University employees and the other Defendants, the contention is sheer

2  speculation lacking plausibility.

3        This leaves only the fraud claims against the University Defendants.  Consistent with above,

4  Eleventh Amendment immunity protects both the University and the University employees in their

5  official capacities.  Also consistent with above, the claim for conspiracy to defraud is dismissed

6  based on insufficient allegations of conspiracy.

7        With respect to the remaining direct fraud claim against the University employees in their

8  individual capacities, Plaintiffs have failed to state a claim for relief because they have not alleged

9  that the University employees ever made a false representation or concealment of any kind.  All that

10  the employees purportedly did was refuse to produce documents subpoenaed by Plaintiffs and then

11  perhaps voluntarily give those documents to Ms. Celaya who then submitted the documents to Judge

12  Castellanos.  But the remedy for the University employees' action was for Plaintiffs to move to

13  compel the documents in the state court proceeding -- not to initiate a lawsuit in federal court.  Fraud

14  has not been sufficiently alleged.

15        All claims against the University Defendants are dismissed with prejudice with the exception

16  of fraud claims against individual University Defendants in their individual capacities, which shall

17  be dismissed without prejudice.

18                            **III.   <u>CONCLUSION</u>**

19        For the foregoing reasons, the Court hereby rules as follows.

20  (1)    The Homeowners Association's motion for summary judgment is granted.  The release

21         signed by Plaintiffs bars as a matter of law all claims asserted against the Homeowners

22         Association.

23  (2)    Alternatively, the Homeowners Association's motion to dismiss or, in the alternative, for a

24         more definite statement is granted.  All claims, except for the fraud claims, are barred by the

25         statute of limitations.  The dismissal of these claims is with prejudice.  With respect to the

26         fraud claims, the claim for conspiracy to defraud is dismissed with prejudice.  The

27         conspiracy claim is fantastic, speculative and implausible and not subject to repair by

28         amendment.  As for the direct claim for fraud, the allegations of fraud fail to meet the

United States District Court
For the Northern District of California

1  particularity requirement of Rule 9(b).  Were it not for the grant of summary judgment,

2  dismissal of the fraud claim would be without prejudice.

3  (3)  Farmer Insurance's motion to dismiss or, in the alternative, for a more definite statement is

4  granted.  The nonfraud claims are barred by the statute of limitations and dismissed with

5  prejudice.  With respect to the fraud claims, the claim for conspiracy to defraud is dismissed

6  with prejudice.  As for the direct claim for fraud, the allegations of fraud fail to meet the

7  particularity requirement of Rule 9(b).  The dismissal of the fraud claim shall be without

8  prejudice.

9  (4)  Ms. Zimba's motion to dismiss or, in the alternative, for a more definite statement is granted.

10  The nonfraud claims are barred by the statute of limitations and dismissed with prejudice.

11  With respect to the fraud claims, the claim for conspiracy to defraud is dismissed with

12  prejudice.  As for the direct claim for fraud, Plaintiffs shall provide a more definite statement

13  for the remaining fraud claims by February 29, 2008 or otherwise be subject to dismissal

14  with prejudice.

15  (5)  Mr. Coombes's motion to dismiss for lack of subject matter jurisdiction and/or failure to

16  state a claim or, in the alternative, for a more definite statement is granted.  The nonfraud

17  claims are barred by the statute of limitations and dismissed with prejudice.  With respect to

18  the fraud claims, the claim for conspiracy to defraud is dismissed with prejudice.  As for the

19  direct claim for fraud, the allegations of fraud fail to meet the particularity requirement of

20  Rule 9(b).  The dismissal of the fraud claim shall be without prejudice.

21  (6)  The University Defendants' motion to dismiss or, in the alternative, for a more definite

22  statement is granted.  The nonfraud claims based on conduct before August 3, 2005, are

23  dismissed with prejudice.  The nonfraud claims based on conduct on or after August 3, 2005,

24  are dismissed with prejudice to the extent they are asserted against the University and the

25  University employees in their official capacities.  To the extent the nonfraud claims are

26  asserted against the University employees in their individual capacities, Plaintiffs have failed

27  to state a claim for relief.  The dismissal of these nonfraud claims against University

28  employees in their individual capacities is without prejudice.  For the fraud claims, to the

1  extent they are asserted against the University and the University employees in their official

2  capacities, they are dismissed with prejudice.  To the extent the fraud claims are asserted

3  against the University employees in their individual capacities, the claim for conspiracy to

4  defraud is dismissed with prejudice.  As for the remaining direct claim for fraud against the

5  University employees in their individual capacities, they are dismissed without prejudice.

6  (7)     The University Defendants' request for judicial notice, which was unopposed, is granted.

7          Where the Court has dismissed a claim with prejudice, Plaintiffs are barred from making an

8  amendment to any such claim and may not reassert them.  Where the dismissal is without prejudice,

9  Plaintiffs may file an amended complaint if they so choose by February 29, 2008.  Any amended

10 complaint must be in compliance with Federal Rule of Civil Procedure 11, which requires, *inter*

11 *alia*, that "the factual contentions [in a pleading] have evidentiary support or, if specifically so

12 identified, will likely have evidentiary support after a reasonable opportunity for further

13 investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  Plaintiffs are forewarned that, should they fail

14 to comply with Rule 11, they risk being sanctioned.  *See* Fed. R. Civ. P. 11(c) (providing, *inter alia*,

15 that a court may award both monetary and nonmonetary sanctions).  Any more definite statement

16 ordered herein shall also be filed by February 29, 2008.

17         Furthermore, should Plaintiffs elect to proceed in this Court with non-federal claims, the

18 Court reserves the authority to examine whether it should continue to exercise supplemental

19 jurisdiction over said claims or decline to do so under 28 U.S.C. § 1367(c)(3).

20         This order disposes of Docket Nos. 17, 28, 59, 63, 67, 88.

21

22         IT IS SO ORDERED.

23

24 Dated:  February 13, 2008

25                                                   _____

26                                                   EDWARD M. CHEN
                                                     United States Magistrate Judge

27

28

25

1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

                        NORTHERN DISTRICT OF CALIFORNIA

8

CHRISTINE CHANG, *et al.*,                          No. C-07-4005 EMC

9

            Plaintiffs,

10

        v.

11                                                  **CERTIFICATE OF SERVICE**

ROCKRIDGE MANOR CONDOMINIUM, *et*

12  *al.*,

13          Defendants.

    _____/

14

15      I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern

16  District of California.  On the below date, I served a true and correct copy of the attached, by placing

17  said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing

18  said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery

19  receptacle located in the Office of the Clerk.

20

21  Christine  Chang                    *ALL OTHER COUNSEL SERVED VIA*
    341 Tideway Drive #214              *ELECTRONIC FILING*
22  Alameda,  CA 94501

23

24

25  Dated:  February 13, 2008           RICHARD W. WIEKING, CLERK

26

27                                      By:  _____/s/_____
                                             Leni Doyle
28                                           Deputy Clerk

United States District Court

For the Northern District of California