Christine Chang Pro Se, individually
and Eric Sun, disabled
341 Tideway Drive #214
Alameda, CA 94501
Telephone: (510) 769-8232

FILED
08 FEB 29 PM 3:38
[stamp: U.S. District Court, Northern District of California]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CHANG, individually and ERIC SUN, disabled<br><br>Plaintiffs,<br><br>vs.<br><br>ROCKRIDGE MANOR MANAGER EVA AMMANN; and DOES 1-30, inclusive,<br><br>JOINDER<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, ROBERT BIRGENEAU; SUSAN VON SEEBURG; VICTORIA HARRISON; ADAN TEJADA; CONSTANCE PEPPERS CELAYA; and DOES 31-60, inclusive,<br><br>JOINDER<br>PAMELA ZIMBA, ATTORNEY AT LAW; ALBERT COOMBES, ATTORNEY AT LAW; and DOES 61-90, inclusive,<br><br>Defendants. | Case No: C-07-4005 EMC<br><br>FIRST AMENDED COMPLAINT<br><br>Courtroom: C, 15th Floor<br>Judge: Magistrate Judge Edward M. Chen |

1

1  Plaintiffs Christine Chang and Eric Sun complain against the Defendants and each of
2  them, jointly and severally, upon information and belief, and respectfully allege:

## JURISDICTION AND VENUE

4      1. This action seeks monetary damages for violations of the civil rights,
5  privileges and immunities guaranteed under the Fourteenth Amendments to the
6  Constitution of the United States of America and Title 42 U.S.C.S. Section 1983.
7  Jurisdiction is founded on 28 U.S.C.S. Section 1331 and 1343(a)(3)(4), and the
8  aforementioned statutory and constitutional provisions. Plaintiffs further invoke
9  the pendent jurisdiction of this court to consider related claims arising under state
10 law pursuant to 28 U.S.C.S. Section 1367.

11     2. Venue is proper in the Northern District of California pursuant to 28
12 U.S.C.S. Section 1391(b)(c), as, upon information and belief, the Defendants reside
13 in or are doing business in the Northern District of California or because the claims
14 arose in this judicial district.

15     3. Plaintiffs demand a trial by jury.

## PARTIES

17     4. At all relevant times, Plaintiff Chang was a homeowner of Rockridge Manor
18 Condominium from 1991 until 2003. Plaintiffs Chang and Sun are citizens of the
19 United States of America, and citizens and residents of the State of California.

20     5. Upon information and belief, Defendant Rockridge Manor Manager Eva
21 Ammann who is sued individually and as the Manager of Rockridge Manor
22 Homeowners Association on or about 1996 through 2001.

23     6. The true names and capacities of Defendants sued as Defendants DOES
24 1-30, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such
25 fictitious names. Plaintiffs will amend this complaint to allege their true names and
26 capacities when ascertained. Plaintiffs are informed and believe, and upon such
27 information and belief allege that each of the fictitiously named Defendants is

28     2

intentionally responsible in some manner for Plaintiffs' injuries and damages as alleged herein.

**JOINDER PARTIES**

7. Upon information and belief, The Regents of the University of California Robert Birgeneau who is sued herein individually.

8. The Regents of the University of California Susan Von Seeburg who is sued herein individually.

9. The Regents of the University of California Victoria Harrison who is sued herein individually.

10. The Regents of the University of California Adan Tejada who is sued herein individually.

11. The Regents of the University of California Constance Peppers Celaya who is sued herein individually.

12. The true names and capacities of Defendants sued as Defendants DOES 31-60, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and upon such information and belief allege that each of the fictitiously named Defendants is intentionally responsible in some manner for Plaintiffs' injuries and damages as alleged herein.

**JOINDER PARTIES**

13. Upon information and belief, Defendant Pamela Zimba who is sued individually and as an ATTORNEY with her principal place of business located in Benicia, California.

14. The Defendant Albert Coombes who is sued individually and as an ATTORNEY with his principal place of business located in Encino, California.

15. The true names and capacities of Defendants sued as Defendants DOES

3

1  61-90, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by
2  such fictitious names. Plaintiffs will amend this complaint to allege their true names
3  and capacities when ascertained. Plaintiffs are informed and believe, and upon such
4  information and belief allege that each of the fictitiously named Defendants is
5  intentionally responsible in some manner for Plaintiffs' injuries and damages as
6  alleged herein.

## FACTUAL BACKGROUND

8      15. Plaintiffs Chang and Sun, Mother and Son, lived in the Rockridge
9  Manor Condominium between 1991 and 2003. Plaintiffs made many friends and
10 share many indoor and outdoor activities with Eva Ammann, Rockridge Manor
11 Manager. She called on Plaintiffs to help her in her doctor and hospital check
12 in for emergency surgery and make food for her recovery. Over the years, Eva
13 Ammann had access to Plaintiffs unit and made unauthorized entries.
14     16. In 1997 the Rockridge Manor Board of Directors and Eva Ammann
15 invited Plaintiff Chang to serve on the Board. Plaintiff's temporary substitute
16 became formally elected Director who served on the Board from October 1997
17 until April 2000.
18     17. As time went by Plaintiff Chang realized several Board of Directors and
19 Eva Ammann were extorting and embezzling against Homeowners Association.
20 They conspired together forging homeowners' votes in the annual meeting to get rid of
21 the previous President of the Board to facilitate their extortion and embezzlement.
22 They treated homeowners by favoritism. One such homeowner was Constance
23 Peppers Celaya, who owed homeowners association dues by thousand of dollars
24 continuously while the other homeowners were fined and penalized.
25     18. Whenever Plaintiff Chang voted against these majority board members
26 or express disagreement, Plaintiff was yelled at or screamed down. Plaintiff decided
27 to resigned and the Board of Directors found another homeowner to replace Plaintiff.
28

4

1   19. Unexpected by the Board of Directors and Eva Ammann, the new Director did not hesitate to express her disagreement against the crooked Board of Directors, President of the Board, and Manager Eva Ammann. The weekly Board meetings became a battle ground of heated debate, and the crooked Board of Directors, President of the Board, and Manger Eva Ammann started to solicit Plaintiff Chang's return in order to get rid of the new Director. Every and each one of the Directors, President, and Manager stalked Plaintiffs around the condo attempted to persuade Plaintiff Chang's return but concealed the truth behind it.

20. When they were turned down they started the campaign harassing Plaintiffs and rounded up several homeowners to place complaints against Plaintiffs with the Board, but never notify Plaintiffs about the complaints starting April 2000, when Plaintiff Chang stopped serving on the Board, through September 2000.

21. In September 2000, the Manager Eva Ammann found out Plaintiff Chang was out of town on vacation, she framed Plaintiff Sun (disabled) being violent and dangerous and having a gun summoning John George Crisis Center and Oakland Police repeatedly to Plaintiffs' unit during Plaintiff Sun's day off from work until they gained entry. They restrained Plaintiff Sun and searched for a gun. Plaintiff Sun was watching baseball on TV and cooking hotdogs for meal, and anybody could hear his activities through the front door or adjacent walls. Plaintiffs never owned a gun and did not know what a gun looks like.

22. Plaintiff Sun was disabled physically and mentally and all the Board of Directors, Eva Ammann, and the homeowners harassing Plaintiffs were aware of the facts.

23. The President and the Board of Directors and Eva Ammann rectified their malicious acts as protecting all other homeowners from Plaintiffs. They sent out official memo to all homeowners affirming their actions were justified and brought out the underhand complaints they had been collecting since April for such occasion to strike Plaintiffs. They aroused hatred against Plaintiffs to justify their acts and to cover up their extortion and embezzlement.

1      24. Plaintiff Sun constantly worried about being snatched up by John George Crisis
2  Center or Oakland Police locking him up in a hospital or jail. He started to experience
3  severe pain in his legs unable to walk for three months. His doctor prescribed narcotic
4  pain relief but did not ease the pain. He had no choice but to resign from his job at the
5  Oakland Downtown YMCA.
6      25. Plaintiffs retained attorneys filing complaint against these **individuals** President,
7  Board of Directors, and Eva Ammann, at the Alameda County Superior Court on
8  September 12, 2001 (EXHIBIT A).
9      26. These Defendants corrupted Plaintiffs' attorney, Brett Allen, who amended the
10 complaint **adding Rockridge Manor Homeowners Association** as Defendant without
11 Plaintiffs' authorization or knowledge (EXHIBIT B). Between September 12 and
12 October 1, there were **19 days**, thus, Mr. Allen had **saved Defendants from filing**
13 **response** to Plaintiffs' original complaint.
14     27. Throughout the litigation starting October 1, 2001 until April 2005 (see
15 Declaration of Paul A. Conroy in Support of Defendant Motion for Summary Judgment,
16 page 3), Plaintiff Chang was unaware of the First Amended Complaint's existence.
17 Plaintiffs' attorney, Brett Allen, never sent a copy to Plaintiff. After the action concluded
18 in April 2005 and by May, Plaintiff reviewed documents returned by Attorney Pamela
19 Zimba for the first time, and saw the First Amended Complaint in shock.
18     28. Immediately after the Amendment, these Defendants gained upperhand in every
19 aspects of Plaintiffs' state court action utilizing Homeowners Association financial
20 resource to pay for their legal costs covering up their tortious acts, and used Plaintiffs'
21 attorneys to extort legal fees from Plaintiff Chang continuously until April 2005.
22     29. On December 10, 2001, the President and Board of Directors announced
23 Plaintiffs' state court action against the Homeowners Association. On the same night,
24 The Regents of the University of California, Police Department Defendant Constance
25 Peppers Celaya stalked Plaintiff Chang in the laundryroom and assaulted/battered
26 Plaintiffs Chang and Sun with her police offensive skills knowing Plaintiff Sun's
27 disabilities and both Plaintiffs' defenseless status.
28     6

30. Defendant Celaya called her police acquaintance to cover up for her in the crime scene and prohibited victims statements and police report being written up. When Plaintiff Chang contacted The Regents of the University of California Police Department to complain, Defendant Celaya arranged her supervisor-friend to prohibit the complaint. Plaintiff Chang intended to file written complaint at the police department, Defendant Celaya's supervisor-friend refused to supply complaint form.

31. Plaintiff Chang requested Brett Allen to amend the Rockridge Manor complaint including the assault/battery and assailant Celaya. But Brett Allen insisted upon filing a separate complaint lying to Plaintiffs that he would conduct discoveries to prove conspiracy, then consolidate the complaints (EXHIBIT C). Brett Allen did not do any discovery but botched the filings of both complaints in aiding and abetting Defendants in both actions.

32. Plaintiff Chang was forced to maintain two separate actions paying legal fees **for defendants' cause of actions against Plaintiffs** starting October 1, 2001 through September 2005 the motion hearing to set aside the judgment of assault/battery action..

33. Plaintiffs' subsequent attorney Stephen Sirota lied to Plaintiffs that the two actions could not be consolidated. Plaintiff Chang took his advise to seek settlement with Rockridge Manor Defendants who had no intention to settle but to force Plaintiff Sun's deposition. Stephen Sirota would not compel eye-witnesses or gather medical reports to prove Plaintiffs' injuries but simply pressured Plaintiffs to go to trial in the assault/battery action.

34. Plaintiffs' last two attorneys were Defendants Pamela Zimba and Albert Coombes. Defendant Zimba started to consolidate the actions and file for guardian ad litem. Not long after, she turned against Plaintiffs as well. The consolidation was never done.

35. Defendant Zimba attempted to appoint her assistant as the guardian ad litem for Plaintiff Sun. Plaintiffs supplied a friend to be the guardian ad litem but Defendant Zimba had no intention to file the paperwork to protect Plaintiff Sun.

7

36. Defendant Zimba fraudulently promised Plaintiffs recovery in order to induce Plaintiffs to go to trial in the assault/battery action, in the meantime, excluded doctor testimony, police officers testimony, third party witnesses, and Plaintiffs medical report to prove injuries by the assault/battery. To facilitate her fraudulent representation aiding and abetting Defendant Celaya colossus perjury for more than two years, Zimba eliminated a jury trial by inducing Plaintiff Sun taking the stand, who could not withstand a full court because of his mental disability.

37. During the assault/battery trial Defendant Zimba cross-examined Defendant Celaya asking:

(1) Where did Ms. Chang hit you, Ms. Celaya?
(2) Did she hit you with her fist or her hand?
(3) Because Ms. Chang was all over Celaya....
(4) How many times did Ms. Chang hit you? How did Ms. Chang hit you?
(5) So when Ms. Chang comes back in the laundry room, the very first thing she does, according to your testimony, is she just started hitting you?
(6) Did you attempt to block her striking you on the left clavicle?
(7) How did you try to block her?
(8) And when Ms. Pushed you and started hitting you, did you land up against anything in the laundry room?
(9) And when Ms. Chang pushed you, what did you then do?
(10) Did you have an opportunity at that point to refrain from pushing her back?

Defendant Zimba had the detail knowledge that Plaintiffs Chang and Sun were being punched repeatedly, struck by metal keys repeatedly, grabbed by neck and thrown out of laundryroom, and slammed against the laundryroom lockers and walls repeatedly by Defendant Celaya locking Plaintiff's neck with a choke-hold. Defendant Zimba was retained as Plaintiffs' attorney. But she went to court aiding and abetting Defendant Celaya colossus perjury framing Plaintiffs being the assailants.

8

38. Starting July 2004 Defendant Zimba consulted a mysterious person on the phone constantly at the depositions or whenever she could get away to make calls. She was consciously keeping a distance from Plaintiff Chang who could not hear her conversation.

39. Defendant Zimba purposefully botched the assault/battery action but kept lying that Plaintiffs had more than 70% chance winning the action with remedy. After she bolstered Plaintiffs' confidence in her, she held Plaintiff Chang by duress forcing Defendant Albert Coombes' be hired with $7500 retainer and a contingency contract for 33 1/3% split in half between Defendants Zimba and Coombes; or otherwise, Defendant Zimba would not represent Plaintiffs in the Rockridge Manor action which was 5 weeks away. Defendant Zimba extorted $51,000 from Plaintiff at the time.

39. Plaintiff Chang had never met or heard of Defendant Coombes until August 2004. As soon as Defendant Coombes appeared by the end of August, Defendant Zimba turned Plaintiffs over to Defendant Coombes' completely.

40. Defendant Zimba instructed Plaintiffs to ask Mr. Coombes all questions Plaintiffs might have, and Defendant Coombes appeared to be Defendant Zimba's superior. Defendant Zimba continued her consultation with Defendant Coombes every chance she got and each consultation last for long time. Those consultation were either made in person at arm length of Plaintiffs, or by phone.

41. The only difference was Defendant Zimba stopped hiding her consultation with Defendant Coombes from Plaintiffs, because Defendant Coombes was officially Plaintiffs' retained attorney.

42. Upon information and belief and respectfully allege, Defendant Coombes was the person who Defendant Zimba consulted at length starting July 2004 when Defendant Coombes instructed Defendant Zimba pressuring Plaintiffs to drop the assault/battery action. When it was unsuccessful, Defendant Coombes instructed Defendant Zimba to frame Plaintiffs being the assailants to absolve the Rockridge Manor, assault/battery Defendant Celaya, and The Regents of the University of California's liabilities owed to Plaintiffs.

9

**CAUSE OF ACTION AGAINST ROCKRIDGE MANOR MANAGER**

43. Abuse of Process – Rockridge Manor Manager Eva Ammann corrupted Plaintiffs' Attorney Brett Allen in filing the First Amended Complaint on October 1, 2001, adding Rockridge Manor Homeowners Association as a Defendant, to defray the individual Defendant's legal costs, and to arouse homeowners' hatred against Plaintiffs, and to force Plaintiffs matching Rockridge Manor Homeowners Association's financial source. Starting October 1, 2001 until April 2005 the Rockridge Manor action concluded, Plaintiffs were unaware of the First Amended Complaint existence.

44. UNRUH Civil Rights Act – California Civil Code Section 51, prohibits discrimination by business establishments. The California Supreme Court has found that a homeowners' association constitutes a "business establishment" under the Unruh. The Unruh provides that any person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises. A business practice that is unlawful, unfair, or fraudulent violates the California Unfair Business Practices Act, *Southern California Housing Rights Center v. Association and Board of Directors*, 426 F.Supp. 2d 1061 (2005).

45. California Business and Professions Code Section 17200 – The statute of limitation for a Section 17200 claim is four years, see Cal. Bus. & Prof. Code Section 17208. Plaintiffs allege Defendant is in a **fiduciary relationship**, the Statute does not run until Plaintiffs have notice or knowledge of facts to put a reasonable person on inquirey. See *Hobart v. Hobart Estate Co*, 26 Cal. 2d 412 (1945), *Miller v. Bechtel Corp*, 33 Cal. 3d 868 (1983), *Dale Sakai v Merrill Lynch*, 2007 U.S. Dist. LEXIS 35958 (2007).

46. Fraud and Misrepresentation – Starting October 1, 2001 until April 2005, Plaintiffs were fraudulently deceited in the Rockridge Manor state action .

47. Intentional Infliction of Emotional Distress – Starting October 1, 2001, until April 2005, Defendant Eva Ammann corrupted Plaintiffs attorney to file the fraudulent First Amended Complaint, adding Homeowners' Association as Defendant, intended to inflict emotional distress against Plaintiffs causing Plaintiffs lost their home and loss of nearly $70,000 in legal fees.

48. Abuse of Process – Rockridge Manor Manager Eva Ammann corrupted Plaintiffs' Attorney in filing the separate assault/battery action, which should be amended in the Rockridge Manor Homeowners Association action, in order to absolve Defendant Eva Ammann's liabilities in causing the assault/battery, and assault/battery Defendant Celaya liabilities, and The Regents of the University of California Individual Defendants liabilities owed to Plaintiffs.

## CAUSE OF ACTION AGAINST THE REGENTS INDIVIDUAL DEFENDANTS

49. Fourteenth Amendment pursuant to 42 U.S.C.S. Section 1983 – Plaintiffs' constitutionally protected liberty or property interest is at stake which was the proximate cause of (1) the Individual Defendants acting under color of state law (2) deprived Plaintiffs rights secured by the constitution or federal statutes. The assault/battery Defendant Celaya colossus perjury starting 2002 and continued into September 16, 2005 motion hearing. Between The Regents Individual Defendants Susan Von Seeburg, Victoria Harrison, Adan Tejada, and Constance Peppers Celaya, who acted under color of state law, made extensive communication and coordination with Judge Castellanos, Alameda County Superior Court, to deprive Plaintiffs' property interest. Plaintiffs were entitled to all oral and written communication between these Individual Defendants and Judge Castellanos, before and after the motion hearing on September 16, 2005.

50. Abuse of Process – The Regents Individual Defendants used improper legal proceedings to deprive Plaintiffs rights. Plaintiffs were entitled to receive every oral and written communications between these Individual Defendants and state court, and were entitled to any document these Individual Defendants submitted to state court.

11

51. Fourteenth Amendment pursuant to 42 U.S.C.S. Section 1983 – The Regents Individual Defendants Robert Birgeneau and Victoria Harrison attempted to run Plaintiff Chang out of the campus violating Plaintiff's rights of liberty and freedom to visit the campus or park in the parking lot. The Individual Defendant Robert Birgeneau threatened both students of suspending their student status when the legitimate service process was being done for this instant action on September 7, 2007. As soon as Plaintiff left the parking lot where the parking attendant, Vernon Bolds, gave Plaintiff permission to park, a citation officer forcibly cited Plaintiff for $40 parking violation, despite Mr. Bolds' objection. Mr. Bolds told Plaintiff that he knew every citation officers on campus, but did not recognize the citation officer who cited Plaintiff. Mr. Bolds also told Plaintiff that the citation officer regular hour stopping by was 2 to 3 hours away. Plaintiff went to a different parking lot, within few minutes another citation officer started to cite tickets. There was a Regents patrol car parked at the only exit where Plaintiff parked. Plaintiff did not violate any laws or regulations but these Individual Defendants would not allow Plaintiff parked on the campus when serving the instant complaint on September 7, 2007. The Individual Defendant Robert Birgeneau threatened The Regents students of suspending their student status because of the service process.

52. Negligence – The Respondeat Superior and Agency Law hold The Regents Individual Defendants responsible for their employees' intentional tortuous acts. The Regents Individual Defendants acting under color of state law which have a duty of care for general public, such as assault/battery/perjury victimizing innocent citizens. They breached the duty irresponsibly denied Plaintiffs' complaints and their omission to act.

53. Fraud and Misrepresentation – The Regents Individual Defendants Susan Von Seeburg, Victoria Harrison, Adan Tejada, and Constance Peppers Celaya, made extensive communication and coordination with state court judge Castellanos, but

12

1  would not inform Plaintiff of their oral or written communications. Plaintiff Chang was
2  entitled to their oral or written communications including any documents they submitted
3  to the state court. But The Regents Individual Defendants kept Plaintiff Chang in dark
4  without ever notifying any oral or written communications.

**CAUSE OF ACTION AGAINST DEFENDANT PAMELA ZIMBA**

6  52. Abuse of Process – Defendant Zimba utilized improper legal proceedings in
7  both state actions covering up for the Rockridge Manor and assault/battery Defendant.
8  Defendant Zimba initiated the consolidation of both actions and guardian ad litem,
9  but never carried through. Starting August 20, 2004, Defendant Zimba worked with
10 Rockridge Manor Defense attorneys in obstructing Plaintiffs' appeal of the assault/
11 battery action final judgment, in order to absolve the assault/battery Defendant Celaya,
12 The Regents Individual Defendants, and Rockridge Manor Defendants' liabilities.
13 Defendant Zimba attempted to appoint her assistant as Plaintiff Sun's guardian ad litem,
14 but Plaintiffs provided a friend to serve as the guardian ad litem. Defendant Zimba
15 never submitted the application to appoint guardian ad litem to protect Plaintiff Sun.
16 53. Fraud and Misrepresentation – Defendant Zimba aided and abetted assault/
17 battery Defendant Celaya colossus perjury in trial on August 5, 2004, framing Plaintiffs
18 being the assailants. Defendant Zimba extorted over $53,000 from Plaintiff Chang but
19 had no intention to represent Plaintiffs honestly. Defendant Zimba did not expect
20 Plaintiff Chang accepting the Rockridge Manor settlement just to get out of her
21 fraudulent representation because she had intentionally demanded Plaintiff Sun's
22 presence on September 2, 2004, in order to distract Plaintiff Chang from appealing the
23 assault/battery judgment. Plaintiff Chang noticed Plaintiff Sun's mental deterioration
24 and decided not to allow Defendant Zimba further injured against Plaintiff Sun.
25 Defendant Zimba lied to Plaintiffs that the assault/battery judgment was NONSUIT,
26 therefore, Plaintiffs did not have to appeal. Defendant Zimba knew if she told the truth that
27 the judgment was "for defendant with remedy available to the defendant", Plaintiffs

13

1 would definitely appeal instead of having to pay remedy to the assault/battery
2 Defendant Celaya.

3 **CAUSE OF ACTION AGAINST DEFENDANT ALBERT COOMBES**

4. 54. Abuse of Process – In July 2004 Defendant Albert Coombes started to
5 manipulate Plaintiffs' two state actions. Defendant Zimba constantly consulted
6 Defendant Coombes for advise but would not allow Plaintiff Chang hearing their
7 conversations over the phone. Either in various depositions or suppressing
8 Plaintiffs to drop the assault/battery action, Defendant Zimba engaged lengthy
9 conversations with Defendant Coombes. Plaintiffs are informed and believe
10 and respectfully allege that Defendant Coombes was the person orchestrated
11 Defendant Zimba step by step in botching the assault/battery action framing Plaintiffs
12 as the assailants, to absolve the liabilities of assault/battery Defendant Celaya,
13 The Regents Individual Defendants, and Rockridge Manor Defendants who caused
14 the assault/battery.

15 55. Fraud and Misrepresentation – On August 5, 2004, immediately after the
16 assault/battery trial, Defendant Zimba held Plaintiff Chang by duress forcing Defendant
17 Coombes be hired with a retainer of $7500 and a contingency contract of 33 1/3%
18 equally split in between Defendant Coombes and Zimba. Plaintiffs are informed and
19 believe and allege that Defendant Coombes was the person behind Defendant Zimba's
20 holding Plaintiff Chang by duress forcing Defendant Coombes be hired with a retainer
21 of $7500 and the contingency contract. As soon as Defendant Coombes started his
22 representation on August 26, 2004, Defendant Zimba transferred Plaintiffs to
23 Defendant Coombes for all requests and questions. Defendant Coombes clearly acted
24 as Defendant Zimba's superior. Plaintiffs are informed and believe, and allege that
25 that Defendant Coombes orchestrated the deceit against Plaintiffs in the assault/
26 battery action. Because Defendant Zimba consulted him in lengthy conversations
27 during break at the assault/battery trial but would not allow Plaintiffs to hear
28 14

1  the conversation. Starting August 26, 2004. Defendant Zimba consulted Defendant
2  Coombes constantly in length by phone or in person. Plaintiffs are informed and
3  believe and allege Defendant Coombes was equally liable to Plaintiffs' injuries the
4  same as Defendant Zimba. Defendant Coombes forged his accounting to extort the
5  $7500 retainer after representing Plaintiffs from August 26 to September 3, 2004.

## PRAYER

7  56. Plaintiffs pray for guardian ad litem approval to protect Plaintiff Sun, and
8  demand a jury trial. Plaintiffs also pray for judgment in favor of Plaintiffs against
9  the Defendants, jointly and severally, as follows:
10    (1) General and Special damages according to proof in a sum in excess of
11        Seventy-Five Thousand Dollars ($75,000.00);
12    (2) Cost and disbursement of this action including Plaintiff Chang's research
13        and work according to proof;
14    (3) Punitive damages against these Defendants' intentional torts according to proof;
15    (4) For such other and further relief as to the Court may seem just and equitable.

## DECLARATION

17  I, Christine Chang, do declare as follows:
18  I am the Plaintiff of this instant action and a layperson. All facts stated in this
19  First Amended Complaint are known to me from my personal knowledge.
20  I declare under penalty of perjury that the foregoing is true and correct.
21  Executed this 29th day of February 2008 in Alameda, California.

_____
Christine Chang, Plaintiff

15

## CERTIFICATE OF SERVICE

I, CHRISTINE CHANG, hereby certify that on February 29, 2008, I forwarded a true and correct copy of:

First Amended Complaint Case No. C-07-4005 EMC

to Defendants' Counsels by placing a true copy and thereof in a sealed Envelope with first class postage prepaid and addressed as follows:

| | |
|---|---|
| Gaylynn Kirn Conant<br>Lombardi, Loper & Conant, LLP<br>Lake Merritt Plaza<br>1999 Harrison Street, Suite 2600<br>Oakland, CA 94612-3541 | Paul A. Conroy<br>Allman & Nielsen<br>100 Larkspur Landing Circle<br>Suite 212<br>Larkspur, CA 94939 |
| Lee J. Danforth<br>Coddington, Hicks & Danforth<br>555 Twin Dolphin Drive, Suite 300<br>Redwood Shores, Redwood City,<br>California 94065-2133 | Andrew Adler<br>Boornazian, Jensen Garthe<br>555 12th Street, Suite 1800<br>Oakland, CA 94607 |
| Albert F. Coombes<br>15915 Ventura Blvd., Penthouse 4<br>Encino, CA 91436 | Edward Rodzewich<br>Valvrian, Patterson and Stratman<br>1650 Harbor Parkway, Suite 100<br>Alameda, CA 94502 |

I caused such envelopes to be placed for collection and mailing in the United States Mail at San Francisco, California.

Dated:    February 29, 2008

By _____
Christine Chang, Plaintiff

# EXHIBIT A

exhibit B

exhibit C