1  ANDREW R. ADLER, ESQ. (CAL. BAR #56415)
   JASON O. BALOGH, ESQ. (CAL. BAR #238199)
2  BOORNAZIAN, JENSEN & GARTHE
   A Professional Corporation
3  555 12th Street, Suite 1800
   P. O. Box 12925
4  Oakland, CA 94604-2925
   Telephone: (510) 834-4350
5  Facsimile: (510) 839-1897

6  Attorneys for Defendant Pamela Zimba

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 | CHRISTINE CHANG, individually and as       | Case No.: C 07 4005 EMC
   | Guardian ad litem for ERIC SUN, disabled,  |
11 |                                            | **MEMORANDUM OF POINTS &
   |          Plaintiff,                        | AUTHORITIES RE MOTION TO
12 |                                            | DISMISS FIRST AMENDED
   | vs.                                        | COMPLAINT FOR LACK OF
13 |                                            | SUBJECT MATTER JURISDICTION
   | ROCKRIDGE MANOR CONDOMINIUM,               | AND/OR FAILURE TO STATE A
14 | et al.,                                    | CLAIM UPON WHICH RELIEF CAN
   |                                            | BE GRANTED AND FOR A MORE
15 |          Defendants.                       | DEFINITE STATEMENT (FRCP
   |                                            | 12(B)(1), 12(B)(6) AND 12(E))**
16 |                                            |
   |                                            | Date:  May 14, 2008
17 |                                            | Time:  2:30
   |                                            | Courtroom:    C
18 |                                            | Magistrate Judge: Edward M. Chen
   |                                            |
19 |                                            | Complaint Filed: August 3, 2007

-i-

## TABLE OF CONTENTS

| | Page |
|---|---|
| PLEADINGS AND PARTIES………………………………………………………….. | 1 |
| LEGAL ISSUES AND ARGUMENTS…………………………………………………. | 5 |
| 1. THE COURT'S FEBRUARY 2008 ORDER BARS PLAINTIFFS' CLAIM FOR "ABUSE OF PROCESS," AS ASSERTED IN ¶52 OF THE FIRST AMENDED COMPLAINT………………………………………………………. | 5 |
| 2. PLAINTIFFS' CLAIM AGAINST MS. ZIMBA FOR "ABUSE OF PROCESS" FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AGAINST MS. ZIMBA………………………………………….. | 5 |
| 3. THE ABUSE OF PROCESS CLAIM AGAINST MS. ZIMBA IS TIME-BARRED…………………………………………………………………………. | 5 |
| 4. PLAINTIFFS' CLAIM AGAINST MS. ZIMBA FOR FRAUD AND MISREPRESENTATION ("DIRECT FRAUD") FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED………………………….. | 6 |
| 5. AS COMPARED TO ANY SURVIVING CLAIM(S) AGAINST MS. ZIMBA, SUCH FEDERAL QUESTION CLAIMS AS THE FAC ASSERTS AGAINST OTHER DEFENDANTS DO NOT SATISFY THE "SAME CASE OR CONTROVERSY" REQUIREMENT OF 28 U.S.C. §1367(a); THE COURT SHOULD THUS DISMISS ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA……………………………………………….. | 7 |
| 6. ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA SHOULD BE DISMISSED, AS IT/THEY SUBSTANTIALLY PREDOMINATE OVER PLAINTIFFS' FEDERAL LAW CLAIMS… | 9 |
| 7. IF THE COURT DISMISSES PLAINTIFFS' TWO REMAINING FEDERAL CLAIMS, ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA SHOULD BE DISMISSED PURSUANT TO 28 U.S.C. §1367(c)(3)………………………………………………………………. | 10 |
| 8. IF THE COURT DOES NOT DISMISS MS. ZIMBA AS A DEFENDANT IN THE INSTANT ACTION IT SHOULD ORDER PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT WITH RESPECT TO ANY SURVIVING CLAIM(S) AGAINST HER……………………………………………………. | 11 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell Atlantic Corporation, et al. v. William Twombly, et al.* (2007) 127 S. Ct. 1955 .......... 11

*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857 .......... 5, 6

*Hudson v. Delta Air Lines, Inc.* (11th Cir. 1996) 90 F.3d 451 .......... 8

*Picard v. Bay Area Rapid Transit District* (ND Cal. 1993) 823 F.Supp. 1519 .......... 9

*Roberts v. Lakeview Community Hospital* (M.D. Ala. 1997) 985 F.Supp. 1351 .......... 8

*Stavropolous v. Superior Court* (2006) 141 Cal.App.4th 190 .......... 6

**California Statutes**

Code of Civil Procedure §335.1 .......... 6

Code of Civil Procedure §340 .......... 5

**Federal Statutes**

Federal Rule of Civil Procedure 9(b) .......... 6

Federal Rule of Civil Procedure 12(e) .......... 11

28 U.S.C. §1367(a) .......... 7, 8, 9

28 U.S.C. §1367(c)(2) .......... 9, 10

28 U.S.C. §1367(c)(3) .......... 10

42 U.S.C. §1983 .......... 4, 8, 9, 10

**Other Authorities**

5 Witkin, Summary of California Law (10th ed. 2005), §517 .......... 5

## PLEADINGS AND PARTIES

Plaintiff Christine Chang is a former resident/unit owner of the Rockridge Manor Condominium (hereinafter "RMC"), located in Oakland, California. FAC, ¶¶4, 15.[1] Co-plaintiff Eric Sun is Ms. Chang's son. ¶15. The FAC identifies Mr. Chang as a former RMC resident (¶¶4, 15) and, in ¶22, describes him as "disabled physically and mentally."

The FAC segregates the several defendants into three groups. The first group, identified in ¶¶5 and 6, includes a single named defendant, Eva Ammann, who is identified in ¶5 as "Rockridge Manor Manager...sued individually and as the Manager of Rockridge Manor Homeowners Association on or about 1996 through 2001." 2:20-22. Paragraph 6 then names Defendants DOES 1-30, apparently contending that they were somehow associated with Ms. Ammann in her alleged wrongdoing. The second set of defendants is identified in ¶¶7-12. These "Regents defendants" are all associated with the Berkeley campus of the University of California; they include Robert Birgeneau, who is the campus's Chancellor, and university employees Susan Von Seeburg, Victoria Harrison, Adan Tejada and Constance Peppers Celaya, as well as DOES 31-60. The third, and final, set of defendants includes the moving defendant, Pamela Zimba, Esq., co-defendant Albert Coombes, Esq., and DOES 61-90. ¶¶13-15.

The "Factual Background" portion of the FAC begins at ¶15. The FAC goes on to allege that Ms. Chang had served on the RMC Board of Directors from 1997-2000, only to resign when she became disillusioned with what she characterizing by other board members' "extorting and embezzling against [sic] Homeowners Association." 4:19, 26-27. It goes on to contend that Ms. Ammann asked Ms. Chang to return to the Board, charging that when Ms. Chang rejected that request Ms. Ammann and others associated with the RMC management "started the campaign harassing Plaintiffs and rounded up several homeowners to place complaints against Plaintiffs with the Board..." 5:8-9.

The FAC next contends that in September 2000, with Ms. Chang out of town on vacation, Ms. Ammann "framed Plaintiff Sun (disabled) being violent and dangerous and having a gun summoning John George Crisis Center and Oakland Police repeatedly to Plaintiffs' unit during

---

[1] Unless otherwise noted, all further paragraph and page and line references are to the First Amended Complaint.

-1-

1  Plaintiff Sun's day off from work until they gained entry. They restrained Plaintiff Sun and
2  searched for a gun." 5:12-16.  It goes on to charge that at the time, Ms. Ammann and the RMC
3  officers were well aware of Mr. Sun's physical and mental disabilities. ¶22.  Plaintiffs then allege
4  that as a result of the RMC defendants' conduct, Mr. Sun "constantly worried about being
5  snatched up by John George Crisis Center or Oakland police locking him up in a hospital or jail.
6  He started to experience severe pain in his legs unable to walk for three months. His doctor
7  prescribed narcotic pain relief but did not ease the pain. He had no choice but to resign from his
8  job at the Oakland Downtown YMCA." ¶24, 6:1-5.

9  The FAC notes that as a result of the RMC parties' alleged misdeeds, "Plaintiffs retained
10 attorneys filing complaint against these **individuals** President, Board of Directors, and Eva
11 Ammann, at the Alameda County Superior Court on September 12, 2001." ¶25, 6:6-8 (emphasis
12 in the original).

13 In ¶29, the FAC alleges that in December 2001, their neighbor, "The Regents of the
14 University of California, Police Department Defendant Constance Peppers Celaya, stalked Plaintiff
15 Chang in the laundryroom [sic] and assaulted/battered Plaintiffs Chang and Sun with her police
16 offensive skills knowing Plaintiff Sun's disabilities and both Plaintiffs' defenseless status." 6:23-
17 27.  Paragraph 30 then charges that when Ms. Chang tried to complain to Ms. Celaya's superiors
18 at the UC Police Department, they refused to assist with or accept her complaint.

19 Paragraphs 31-33 contain various complaints regarding the conduct of attorneys Brett
20 Allen and Stephen Sirota, who represented Ms. Chang in the early stages of her Alameda County
21 Superior Court lawsuits against Ms. Ammann and the RMC defendants (*Chang v. Ammann, et al.*
22 (Ala SC #2001-023364) and Ms. Celaya (*Chang v. Celaya, et al.* (Ala SC #2002-046048)).

23 In ¶¶34 and 35 Plaintiffs note that their "last two attorneys were Defendants Pamela Zimba
24 and Albert Coombes." 7:22.  In ¶34 they charge that once retained, "Defendant Zimba started to
25 consolidate the actions and file for guardian ad litem. Not long after, she turned against Plaintiffs
26 as well." 7:23-24.  In turn, ¶35 states that "Plaintiffs supplied a friend to be the guardian ad litem
27 but Defendant Zimba had no intention to file the paperwork to protect Plaintiff Sun." 7:26-27.
28 The next several paragraphs make further charges against Ms. Zimba. In ¶36 plaintiffs

-2-

charge that Ms. Zimba "fraudulently promised Plaintiffs recovery in order to induce Plaintiffs to go to trial in the assault/battery action...To facilitate her fraudulent representation aiding and abetting Defendant Celaya colossus perjury for more than two years, Zimba eliminated a jury trial by inducing Plaintiff Sun taking the stand, who could not withstand a full court because of his mental disability." 8:1-7. Paragraph 37 criticizes Ms. Zimba's examination of Ms. Celaya during the trial of *Chang v. Celaya*, charging that "Defendant Zimba was retained as Plaintiffs' attorney. But she went to court aiding and abetting Defendant Celaya colossus perjury framing Plaintiffs being the assailant." 8:25-27.

The FAC contains two paragraphs that bear the number "39." 9:4-10 and 11-18. The first of those paragraphs charges that Ms. Zimba "purposefully botched the assault/battery action but kept lying that Plaintiffs had more than 70% chance winning the action with remedy." 9:4-5. The second ¶39 simply discusses co-defendant Coombes' entry into the two underlying cases.

In ¶42, Plaintiffs charge on information and belief that "Defendant Coombes was the person who Defendant Zimba consulted at length starting July 2004 when Defendant Coombes instructed Defendant Zimba pressuring Plaintiffs to drop the assault/battery action. When it was unsuccessful, Defendant Coombes instructed Defendant Zimba to frame Plaintiffs being the assailants to absolve the Rockridge Manor, assault/battery Defendant Celaya, and the Regents of the University of California's liabilities owed to Plaintiffs." 9:42-48.

Paragraphs 43-48 of the FAC list Plaintiffs' "Cause [sic] of Action Against Rockridge Manor Manager." 10:1. The purported causes of action include abuse of process, violation of the Unruh Civil Rights Act (California Civil Code §51), violation of California Business & Professions Code §17200, fraud and misrepresentation, intentional infliction of emotional distress and (for the second time) abuse of process.

Plaintiffs list their "Cause [sic] of Action Against the Regents Individual Defendants" in ¶¶49-53. In ¶49 they assert that those defendants violated their constitutional rights by "The assault/battery Defendant Celaya colossus perjury starting 2002 and continued into September 16, 2002 motion hearing." 11:16-18. In the same paragraph they also charge that "Between the Regents Individual Defendants Susan Von Seeburg, Victoria Harrison, Adan Tejada, and

1  Constance Peppers Celaya, who acted under color of state law, made extensive communication
2  and coordination with Judge Castellanos,[2] Alameda County Superior Court, to deprive Plaintiffs'
3  property interest." Paragraph 50 charges those defendants with abuse of process. In ¶51 plaintiffs
4  claim that when Ms. Chang tried to serve the Regents Defendants with summons and complaint in
5  the instant action in September 2007, defendants Birgeneau and Harrison "attempted to run
6  Plaintiff Chang out of the campus violating Plaintiff's rights of liberty and freedom to visit the
7  campus or park in the parking lot," thereby again violating her constitutional rights and giving rise
8  to a cause of action under 42 U.S.C. §1983.  12:1-4.  Paragraphs 52 and 53 then assert state law
9  causes of action for negligence (¶52) and fraud and misrepresentation (¶53).

Plaintiffs list their "Cause [sic] of Action Against Defendant Pamela Zimba" on page 13 of the FAC.  In (their second) ¶52, plaintiffs charge Ms. Zimba with "Abuse of Process," as follows:

> Defendant Zimba utilized improper legal proceedings in both state actions covering up for the Rockridge Manor and assault/battery Defendant. Defendant Zimba initiated the consolidation of both actions and guardian ad litem, but never carried through. Starting August 20, 2004, Defendant Zimba worked with Rockridge Manor Defense attorneys in obstructing Plaintiffs' appeal of the assault/battery action final judgment, in order to absolve the assault/battery Defendant Celaya, The Regents Individual Defendants, and Rockridge Manor Defendants' liabilities. Defendant Zimba attempted to appoint her assistant as Plaintiff Sun's guardian ad litem, but Plaintiffs provided a friend to serve as the guardian ad litem. Defendant Zimba never submitted the application to appoint guardian ad litem to protect Plaintiff Sun.

13:6-15.  In (their second) ¶53, labeled "Fraud and Misrepresentation," plaintiffs allege that:

> Defendant Zimba aided and abetted assault/battery Defendant Celaya colossus perjury in trial on August 5, 2004, framing Plaintiffs being the assailants. Defendant Zimba extorted over $53,000 from Plaintiff Chang but had no intention to represent Plaintiffs honestly. Defendant Zimba did not expect Plaintiff Chang accepting the Rockridge Manor settlement just to get out of her fraudulent representation because she had intentionally demanded Plaintiff Sun's presence on September 2, 2004, in order to distract Plaintiff Chang from appealing the assault/battery judgment. Plaintiff Chang noticed Plaintiff Sun's mental deterioration and decided not to allow Defendant Zimba further injured against Plaintiff Sun. Defendant Zimba lied to Plaintiffs that the assault/battery judgment was NONSUIT, therefore, Plaintiffs did not have to appeal. Defendant Zimba knew if she told the truth that the judgment was "for defendant with remedy available to the defendant", Plaintiffs would definitely appeal instead of having to pay remedy to the assault/battery Defendant Celaya.

13:16-14:2.

---

[2] Honorable Cecilia P. Castellanos was the trial judge for the *Chang v. Celaya* matter.

-4-

Plaintiffs conclude the allegations of the FAC by charging defendant Coombes with Abuse of Process (¶54) and Fraud and Misrepresentation (¶55).

## LEGAL ISSUES AND ARGUMENTS

1. **THE COURT'S FEBRUARY 2008 ORDER BARS PLAINTIFFS' CLAIM FOR "ABUSE OF PROCESS," AS ASSERTED IN ¶52 OF THE FIRST AMENDED COMPLAINT**

As noted, the FAC contains a would-be claim against Ms. Zimba for "Abuse of Process." 13:6-15. The second cause of action of plaintiffs' initial Complaint (hereinafter "Complaint") made a similar claim against several defendants, including Ms. Zimba, for "Malicious Prosecution/Abuse of Process." Complaint, 26:10-15. Ms. Zimba attacked that claim in her prior motion to dismiss; various other defendants did the same. The Court's February 13, 2008 Order Granting Defendants' Motion to Dismiss, Etc. (hereinafter "Order") thus held that as against Ms. Zimba, "The nonfraud claims are barred by the statute of limitations and dismissed with prejudice." Order, 24:9-10 (emphasis added). That dismissal with prejudice bars plaintiffs from further pursuing a claim for abuse of process against Ms. Zimba. Ms. Zimba thus requests the Court to dismiss plaintiffs' cause of action against her for abuse of process with prejudice.

2. **PLAINTIFFS' CLAIM AGAINST MS. ZIMBA FOR "ABUSE OF PROCESS" FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AGAINST MS. ZIMBA**

"The tort of abuse of process is committed by the misuse of process, such as attachment or injunction; i.e., its use for a purpose other than that for which the process is designed." 5 Witkin, Summary of California Law (10th ed. 2005), §517 at 767. As was the case with respect to the initial Complaint, there is nothing in the FAC that shows that Ms. Zimba initiated or used any sort of court process against Ms. Chang or Mr. Sun. In the absence of such a showing – and given the inherent absurdity of any attempt Plaintiffs might make to fill that gap – Ms. Zimba respectfully urges the Court to grant this motion to dismiss plaintiff's second cause of action with prejudice.

3. **THE ABUSE OF PROCESS CLAIM AGAINST MS. ZIMBA IS TIME-BARRED**

Prior to 2003, the one-year statute of limitations set out in CCP §340 governed claims for abuse of process. See *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886-887. With the enactment of CCP §335.1, effective January 1, 2003, that new statute's two-year limitations

-5-

period now governs such causes of action. See *Stavropolous v. Superior Court* (2006) 141 Cal.App.4th 190, 196-197, holding that §335.1's reference to "injury to, or for the death of, an individual caused by the wrongful act or neglect of another" made the statute applicable to "all infringements of personal rights…"

Section 335.1 bars the FAC's claim against Ms. Zimba or "Abuse of Process." As against such a claim, the limitations period commences when the abuse of process takes place or, if the abuse causes no instantaneous damage to plaintiff, when injury does first occur. *Cantu, supra*, at 886-887. Here, judgment was entered in *Chang v. Celaya* in August 2004, while all proceedings in the case against the RMC parties ended in Spring 2005 (see the Request for Dismissal, and entry of dismissal, which is Exhibit 4 to Ms. Zimba's Request for Judicial Notice in support of her opposition to defendants' earlier motions to dismiss).[3] Given those facts, it is clear that the two-year limitations period of §335.1 had run by August 3, 2007, when Ms. Chang filed this action.

In light of the foregoing, Ms. Zimba respectfully urges the Court to grant this motion to dismiss with respect to plaintiff's claim for Abuse of Process with prejudice.

**4.   PLAINTIFFS' CLAIM AGAINST MS. ZIMBA FOR FRAUD AND MISREPRESENTATION ("DIRECT FRAUD") FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

Federal Rule of Civil Procedure 9(b) directs that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As noted by co-defendant Coombes in his Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to FRCP 12(b)(1) & 6, 6:18-23 (citations omitted):

> Rule 9(b) is usually interpreted to require that the plaintiffs include in their complaint facts specifying the alleged fraudulent allegations; allegations that the representations were false when made; the identity of the speaker; when and where the statements were made; and the manner in which the representations were false and misleading.

The Court noted those same principles requirement in its February 2008 Order, holding that (at 20:21-26) (citation omitted):

> Plaintiffs shall provide a more definite statement as to the basis of their claim for fraud. In particular, they must specify such facts as the times, dates, and places of the fraud, the benefits received by Ms. Zimba, and other details of the alleged

---

[3] A copy of that document is attached to Mr. Adler's Request for Judicial Notice, to be submitted, as Exhibit A.

-6-

fraudulent activity. The allegations of fraud must be "specific enough to give [Ms. Zimba] notice of the particular misconduct which is alleged to constitute the fraud charged so that [she] can defend against the charge and not just deny that [she has] done anything wrong."

The FAC entirely fails to meet that standard. It does not in any way "specify such facts as the times, dates, and places of the fraud." It does not charge that Ms. Zimba received any "benefit" by reason of her alleged wrongdoing other than the $53,000 that apparently represented the fees and cost reimbursement she earned in legitimately pursuing plaintiffs' claims in the underlying state court cases.[4] Although ¶53 of the FAC asserts that Ms. Zimba did not expect Plaintiffs to settle with the RMC defendants (13:19-23), there is no explanation of why such an expectation would evidence any fraudulent intent or conduct on her part; similarly, even if one were able to divine its meaning, the allegation that Ms. Chang "noticed Plaintiff Sun's mental deterioration and decided not to allow Defendant Zimba further injured [sic] against Plaintiff Sun" (13:23-24) says nothing about any fraudulent misrepresentation by Ms. Zimba. Finally, the Court has already held that Plaintiffs' claims that Ms. Zimba had injured them by characterizing the outcome of the Celaya state court trial as a "NONSUIT" (13:25-14:2) raises no issue at all; see Order, 10:17-18, holding that "As for the judgment in the Celaya case, whether it was improperly characterized as a 'nonsuit' is immaterial to Plaintiffs' legal position."

Plaintiffs have now had two opportunities to comply with Rule 9(b). Because plaintiffs have twice failed to satisfy the Rule, this Court would be well within its authority to dismiss that claim with prejudice. Ms. Zimba urges the Court to do so.

5. **AS COMPARED TO ANY SURVIVING CLAIM(S) AGAINST MS. ZIMBA, SUCH FEDERAL QUESTION CLAIMS AS THE FAC ASSERTS AGAINST OTHER DEFENDANTS DO NOT SATISFY THE "SAME CASE OR CONTROVERSY" REQUIREMENT OF 28 U.S.C. §1367(a); THE COURT SHOULD THUS DISMISS ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA**

Plaintiffs' causes of action against Ms. Zimba for abuse of process and fraud and misrepresentation both arise under state law, and thus fall outside of the District Court's original

---

[4] Here, the Court should note that it has already opined that "…the transcript of the trial in the Celaya case, which the Court has reviewed, does not demonstrate Ms. Zimba 'framed' her own client," and "…that Ms. Zimba proceeded with discovery in the second lawsuit in the immediate aftermath of the Celaya lawsuit was only to be expected since the trial in that case was upcoming." Order, 10:15-17, 18-20.

-7-

jurisdiction. The Court's jurisdiction over those two claims – if any – must thus be found in 28 U.S.C. §1367(a), which provides that:

> Except as provided by subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

As per *Roberts v. Lakeview Community Hospital* (M.D. Ala. 1997) 985 F.Supp. 1351, citing and following *Hudson v. Delta Air Lines, Inc.* (11th Cir. 1996) 90 F.3d 451, "In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."

*Roberts, supra*, provides a useful guide for application of that rule. Ms. Roberts was employed by Lakeview Community Hospital; the co-defendant, Dr. Lawrence, worked as a surgeon at the same hospital. Ms. Rogers alleged that Dr. Lawrence had assaulted her at the hospital and, in turn, that after she complained to the hospital authorities regarding the doctor's wrongdoing, she "was demoted and replaced by a male employee with less experience and qualifications than she." 985 F.Supp. at 1351. Her complaint included two causes of action; one charged the hospital with violation of Title VII's ban on gender-based employment discrimination, while the other asserted a state law assault and battery claim against Dr. Lawrence. When the doctor moved for dismissal under §1367(a), the District Court granted his motion. In doing so, it noted that "The two claims…are distinctly different. The Title VII claim is not based upon the act alleged to have been an assault and battery; the Title VII claim is based upon the hospital's alleged reaction to that incident. There is no allegation of similar occurrences." 985 F.Supp. at 1352.

Ms. Zimba is confident that the Court will reach the same result when it applies §1367(a) to the instant case. There is, of course, no pending federal claim against Ms. Zimba. Moreover, the two §1983 claims against the Regents Individual Defendants that represent the Plaintiffs' only federal claims (see FAC, ¶¶49 and 51) do not overlap with Plaintiffs' state law claims against Ms.

1  Zimba.[5]

2  While considering this argument, the Court should also note that both of Plaintiffs' federal claims are also so obviously devoid of merit as to be frivolous. Accordingly, neither of those claims provides a basis for supplemental jurisdiction. See *Picard v. Bay Area Rapid Transit District* (ND Cal. 1993) 823 F.Supp. 1519, 1526-1527.

Given the foregoing points and authorities, Ms. Zimba thus respectfully urges the Court to dismiss plaintiffs' surviving claims against her, if any, for want to supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

**6.   ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA SHOULD BE DISMISSED, AS IT/THEY SUBSTANTIALLY PREDOMINATE OVER PLAINTIFFS' FEDERAL LAW CLAIMS**

Subsection (c) of 28 U.S.C. §1367 lists several circumstances in which the "may decline to exercise supplemental jurisdiction over a claim under subsection (a)," including, in subsection (c)(2), a finding that "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." Here, that subsection clearly provides the Court with the discretionary authority to dismiss the state law claims against Ms. Zimba and, in turn, dismiss her from the litigation.

As noted *supra*, plaintiffs are presently asserting only two federal claims, i.e., the two §1983 claims contained in ¶¶49 and 51. Each of those claims seeks relief from various Regents Individual Defendants; neither makes any reference to Ms. Zimba or any other defendant. The first of those claims, asserted in ¶49 of the FAC, apparently charges that Individual Regents Defendants Von Seeburg, Harrison, Tejada and Celaya entered into some sort of conspiracy with Alameda County Superior Court Judge Cecilia Castellanos with respect to the *Chang v. Celaya* trial. Those defendants have already filed a motion to dismiss/motion for summary judgment

---

[5] Plaintiffs may argue that the §1983 claim asserted in ¶49 against the Regents Individual Defendants does overlap with the fraud and misrepresentation claim against Ms. Zimba insofar as they each refer to Ms. Celaya's alleged "colossus perjury." See ¶49, 11:17 and ¶53, 13:16-18. If so, the Court should note that it has already rejected plaintiffs' claim that Ms. Zimba was involved in a conspiracy to submit or accept Ms. Celaya's allegedly perjured testimony. Order, 14:15-15:4.

-9-

against that cause of action;[6] if, as seems likely, the Court grants those defendants the requested relief, it will be removed from the case. Even if this cause of action survives the affected defendants' challenge, the issues it raises will be disposed of by simple testimony from those defendants (and, perhaps, Judge Castellanos) and will take up only a very small part of the time that might be consumed in trying the state court claims Plaintiffs have attempted to assert against Ms. Zimba and/or the other defendants. It thus seems clear that, as per §1367(c)(2), the state law claims "substantially predominate" over anything that might survive of the federal claim asserted in ¶49 of the FAC.

In the second of their two federal claims, found in ¶51 of the FAC, plaintiffs contend that Regents Individual Defendants Birgeneau and Harrison violated Ms. Chang's Fourteenth Amendment rights by attempting to "run Plaintiff Chang out of the campus" when she tried to serve the University, et al. with the Summons and Complaint in the instant action on September 7, 2007. Even if one ignores the obvious absurdity of this claim, it is clear that it raises very limited issues against only two of the ten named defendants and, in turn, that the issues raised by any surviving state law claim vis-à-vis Ms. Zimba and/or the remaining defendants will clearly predominate over those issues.

Given the foregoing, Ms. Zimba respectfully urges the Court to dismiss plaintiffs' claims against her, and each of them, pursuant to 28 U.S.C. §1367(c)(2).

## 7. IF THE COURT DISMISSES PLAINTIFFS' TWO REMAINING FEDERAL CLAIMS, ANY SURVIVING STATE LAW CLAIM(S) AGAINST MS. ZIMBA SHOULD BE DISMISSED PURSUANT TO 28 U.S.C. §1367(c)(3)

Subsection (c)(3) of §1367 provides that the District Court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the district court has dismissed all claims over which it has original jurisdiction." As noted *supra*, the FAC asserts only two "original jurisdiction" claims, i.e., the §1983 claims asserted against certain Regents Individual Defendants in ¶¶49 and 51. Those defendants have already filed a Motion to Dismiss Pursuant to FRCP 12(b)(6) or, in the Alternative, Motion for Summary Judgment with respect to both of those

---

[6] The Regents and the Regents Individual Defendants filed their Motion to Dismiss Pursuant to FRCP 12(b)(6) or, In the Alternative, Motion for Summary Judgment on March 17, 2008.

-10-

claims; if that motion is granted, the Court should also exercise its authority under §1367(c)(3) and dismiss the state law claims against Ms. Zimba.

### 8. IF THE COURT DOES NOT DISMISS MS. ZIMBA AS A DEFENDANT IN THE INSTANT ACTION IT SHOULD ORDER PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT WITH RESPECT TO ANY SURVIVING CLAIM(S) AGAINST HER

Federal Rule of Civil Procedure 12(e) provides in material part that "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." If the Court chooses to deny Ms. Zimba's motion to be dismissed as a defendant in the instant action, and allows either of the purported causes of action asserted in ¶¶52 and 53 to proceed as against her, Rule 12(e) compels the Court to direct plaintiffs to file a more definite statement with respect to any surviving cause of action.

Plaintiffs' purported claims for Abuse of Process (¶53) and Fraud and Misrepresentation (¶54) obviously run afoul of the standard stated in the Rule. Paragraph 53 refers to Ms. Zimba's use of "improper legal proceedings," but does not identify any such "proceeding" or state how Ms. Zimba improperly "used" that "proceeding." The same paragraph asserts that Ms. Zimba "initiated the consolidation of both actions and guardian ad litem, but never carried through," but fails to state how Ms. Zimba thereby damaged either plaintiff. Paragraph 53 goes on to charge that Ms. Zimba somehow "worked with Rockridge Manor Defense attorneys in obstructing Plaintiffs' appeal of the assault/battery action final judgment," and otherwise wrongfully aided the defendants in the underlying cases, but does not cite any specific act or omission on her part that would support that very unlikely claim.[7] Plaintiffs then conclude that paragraph by asserting that Ms. Zimba never submitted an application to appoint a guardian ad litem for Mr. Sun, but fail to explain or state facts that might show how that conduct (i.e., the failure to file a motion) might have amounted to an "abuse" of process.

---

[7] The claim is more than unlikely. In fact, it has already been dismissed; see Order, 14:1-15:9, holding that plaintiffs' "patently fanciful and insubstantial" allegations of a conspiracy between Ms. Zimba and defense counsel in the course of the underlying state court actions could not pass the test of "plausibility" set out in *Bell Atlantic Corporation, et al. v. William Twombly, et al.* (2007) 127 S. Ct. 1955, 1964-1965.

-11-

Paragraph 53, which purports to state a claim against Ms. Zimba for "Fraud and Misrepresentation," is no clearer than ¶52. It begins by reasserting the already rejected claim that Ms. Zimba "aided and abetted…Defendant Celaya colossus perjury." It goes on to charge that Ms. Zimba "extorted over $53,000 from Plaintiff Chang…," albeit without providing any "facts" to support or explain what appears to have been nothing more than Ms. Zimba's entirely appropriate expectation that she be paid for her time and reimbursed for her expenses. The next two sentences of the paragraph ("Defendant Zimba did not expect Plaintiff Chang accepting the Rockridge Manor settlement just to get out of her fraudulent representation because she had intentionally demanded Plaintiff Sun's presence on September 2, 2004, in order to distract Plaintiff Chang from appealing the assault battery judgment," and "Plaintiff Chang noticed Plaintiff Sun's mental deterioration and decided not to allow Defendant Zimba further injured against Plaintiff Sun.") are simply unintelligible. The Court has already rejected plaintiffs' claims that Ms. Zimba identified the judgment in the *Celaya* action as a "NONSUIT;" see Order, 10:17-18, holding that "As for the judgment in the Celaya case, whether it was improperly characterized as a "nonsuit" is immaterial to Plaintiffs' legal position."

In light of the foregoing authorities and analysis, Ms. Zimba requests that plaintiffs be directed to provide a more definite statement of any cause of action that survives her motions to dismiss, as contained hereinabove.

DATED:   March 20, 2008

BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation

By: _____
ANDREW R. ADLER, ESQ.
Attorneys for Defendant
Pamela Zimba, Esq.

25168/428612

-12-