UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CHANG, *et al.*, | No. C-07-4005 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT; AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| ROCKRIDGE MANOR CONDOMINIUM, *et al.*, | |
| Defendants. | **(Docket Nos. 111, 113, 130-31, 145)** |

  Previously, the Court issued an order in which it (1) granted motions to dismiss that had been filed by many of the defendants in the action and (2) granted a motion for summary judgment that had been filed by the Rockridge Manor Homeowners' Association. *See* Docket No. 110. Pursuant to that order, some of the claims that were asserted were dismissed with prejudice and others without prejudice. For those claims that were dismissed without prejudice, the Court allowed Plaintiffs to file an amended complaint. Plaintiffs timely did so, and now the first amended complaint ("FAC") is the subject of a new round of dispositive motions by the defendants remaining in the action.

  Having considered the parties briefs and accompanying submissions, the Court hereby **GRANTS** Defendants' motions. The Court notes that, although the motions sought dismissal of claims raised by both Plaintiffs in the action, the Court's order of May 6, 2008, dismissed Plaintiff Eric Sun from the litigation. *See* Docket No. 170. Accordingly, this order addresses only the claims asserted by Plaintiff Christine Chang.

## I. FACTUAL & PROCEDURAL BACKGROUND

The factual allegations in the FAC do not materially differ from those in the initial complaint. As in the original complaint, Ms. Chang alleges in the FAC that she and her son, Mr. Sun, lived in the Rockridge Manor Condominium from 1991 to 2003, *see* FAC ¶¶ 4, 15; that Defendant Eva Ammann was the manager of the Rockridge Manor Homeowners Association during the relevant period, *see* FAC ¶ 5; that Ms. Chang served on the board for the Homeowners Association from October 1997 to April 2000, during which time she realized that Ms. Ammann and several of the board members were extorting and embezzling from the Homeowners Association, *see* FAC ¶¶ 16-17; that Ms. Chang resigned from the board because she was poorly treated by the board members when she opposed them, *see* FAC ¶ 18; that the board member who replaced her also ended up opposing the board members, which caused the board members to solicit her return, *see* FAC ¶¶ 19; and that, when Ms. Chang refused to return, the board members began a campaign of harassment against her and her son, which included a call by Ms. Ammann to the police in 2000, claiming that Mr. Sun had a gun on the premises. *See* FAC ¶¶ 20-21.

In the FAC, Ms. Chang also alleges that she and Mr. Sun initiated a lawsuit against Ms. Ammann, the board members, and the president of the Homeowners Association (collectively, "Rockridge individuals"). *See* FAC ¶ 25. The basis of the lawsuit was Ms. Ammann's call to the police in which she claimed that Mr. Sun had a gun in the condominium. According to Ms. Chang, the Rockridge individuals corrupted the attorney that she and Mr. Sun hired to represent them in the case (Bret Allen), as evidenced by the attorney's amending the complaint, without their knowledge or consent, to add the Homeowners Association as a defendant. *See* FAC ¶ 26. By adding the Homeowners Association as a defendant, the attorney helped the Rockridge individuals because, now, the Homeowners Association would pay for all of the legal costs. *See* FAC ¶ 28. Ms. Chang claims that she as well as Mr. Sun were unaware of the amended complaint until April 2005. *See* FAC ¶¶ 27, 43.

As in the original complaint, Ms. Chang further alleges in the FAC that, on December 10, 2001, the president and board for the Homeowners Association announced the lawsuit filed by Ms. Chang and Mr. Sun, which now included the Homeowners Association as a defendant. *See* FAC ¶

20.  That night, Defendant Constance Peppers Celaya, an employee of the University of California ("University") Police Department, assaulted and battered Ms. Chang and Mr. Sun.  *See* FAC ¶ 20.  Ms. Chang alleges that, when she asked her attorney (Mr. Allen) to amend the complaint against the Rockridge individuals to include an assault/battery claim against Ms. Celaya, the attorney insisted upon filing a separate complaint against Ms. Celaya and represented that he would conduct discovery to prove a conspiracy between the Rockridge individuals and Ms. Celaya after which he would consolidate the two complaints.  *See* FAC ¶ 31.  The attorney, however, never consolidated the complaints.  *See* FAC ¶ 31.  A subsequent attorney (Stephen Sirota) that Ms. Chang and Mr. Sun hired represented to them that the case against the Rockridge individuals and the case against Ms. Celaya could not be consolidated.  *See* FAC ¶ 33.  Finally, yet another attorney that Ms. Chang and Mr. Sun subsequently hired, Defendant Pamela Zimba, started the process of consolidation but never completed it.  *See* FAC ¶ 34.

Like the original complaint, the FAC contains allegations that Ms. Zimba induced Ms. Chang and Mr. Sun to go to trial in the assault/battery case against Ms. Celaya and then failed to pursue or present key evidence for trial, *see* FAC ¶ 36; that, during the trial, Ms. Zimba framed Ms. Chang and Mr. Sun as the assailants, rather than Ms. Celaya, *see* FAC ¶¶ 37; and that Ms. Zimba effectively eliminated a jury trial in the case against Ms. Celaya by persuading Mr. Sun, who could not withstand a "full court because of his mental disability," to testify.  FAC ¶ 36.  Ms. Zimba, although representing Ms. Chang and Mr. Sun, took these actions in order to help the Rockridge Manor Homeowners Association, Ms. Celaya, and the University.  *See, e.g.*, FAC ¶¶ 34, 37, 42.  The FAC further contains allegations that Ms. Zimba pressured Ms. Chang and Mr. Sun to hire Defendant Albert Coombes, another attorney, to represent them, *see* FAC ¶ 39; that Mr. Coombes was actually Ms. Zimba's "superior," FAC ¶ 40; and that it was Mr. Coombes who directed Ms. Zimba to frame Ms. Chang and Mr. Sun as the assailants in the case against Ms. Celaya in order to absolve the Rockridge Manor Homeowners Association, Ms. Celaya, and the University from liability.  *See* FAC ¶ 42.

Finally, in the FAC, Ms. Chang alleges that Defendants Robert Birgeneau and Victoria Harrison (both employees of the University) would not allow Ms. Chang to park on the University

3

1  campus so that she could serve the original complaint, *see* FAC ¶ 51; that Mr. Birgeneau threatened
2  students trying to serve the original complaint on campus with suspending their student status, *see*
3  FAC ¶ 51; and that Ms. Harrison and Ms. Celaya, as well as Defendants Susban Von Seeburg and
4  Adan Tejada (also University employees), made ex parte communications with Judge Castellanos,
5  the presiding judge in the assault/battery case against Ms. Celaya. *See, e.g.*, FAC ¶¶ 49, 53.

## II. DISCUSSION

In the FAC, the defendants sued are Ms. Ammann, the employees of the University identified above (collectively, "University Defendants"), Ms. Zimba, and Mr. Coombes. All of the defendants have filed motions challenging the FAC. Each motion is addressed below. As stated above, because Mr. Sun has now been dismissed from the litigation, the Court addresses the motions only with respect to the claims asserted by Ms. Chang.

A.  Ms. Ammann

In the FAC, Ms. Chang asserts the following causes of action against Ms. Ammann: (1) abuse of process; (2) violation of the Unruh Civil Rights Act, *see* Cal. Civ. Code § 51; (3) violation of California Business & Professions Code § 17200; (4) fraud and misrepresentation; and (5) intentional infliction of emotional distress. Ms. Ammann has filed both a motion to dismiss and a motion for summary judgment.[1] *See* Docket Nos. 111, 113.

1.  Motion for Summary Judgment

For the reasons discussed in its prior order of February 13, 2008, in which the Court granted summary judgment to the Rockridge Homeowners Association, *see* Docket No. 110, at 9-10, Ms. Ammann is entitled to summary judgment. That is, the release and covenant not to sue that Ms. Chang signed in February 2005, bars her from raising any claim against Ms. Ammann based on the events at issue. *See* Docket No. 61 (Conroy Decl., Ex. F) (release).

Ms. Chang alleges that she was fraudulently induced to settle -- *i.e.*, there was a conspiracy between her attorneys and the Rockridge defendants in the state court lawsuit (which included Ms.

---

[1] These motions were filed prior to Plaintiffs' filing of the FAC. However, in a subsequent order, the Court noted that many of the arguments made in the motions were applicable to the FAC and so deemed the motions as challenges to the FAC. *See* Docket No. 133.

Ammann). As this Court held in its order granting summary judgment dated February 13, 2008, Ms. Chang's alleged unilateral mistake does not void the release. *See* Docket No. 110 (Order at 10). The claim of conspiracy is not sufficient to vitiate the release. *See id.* (Order at 10, 14-15). Nothing in the FAC changes this analysis or conclusion. The "evidence" Ms. Chang now cites, *see, e.g.*, Opp'n at 4 (claiming that the conspiracy was "obvious" because (1) Ms. Chang's attorney agreed to take the depositions of the Rockridge defendants on August 20, 2004, when their depositions had already been taken on July 9, 2004, and because (2) Ms. Chang's attorney agreed to have Ms. Chang deposed in "multiple morning and afternoon sessions, between August 20 and 31, [2004], ten days before the trial"), adds nothing to establishing a plausible conspiracy. *See Rice v. United States Supreme Court*, No. No. C 03-05582 CRB, 2003 U.S. Dist. LEXIS 22860, at *2-3 (N.D. Cal. Dec. 17, 2003) (dismissing "patently insubstantial" complaint); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996) (stating that "unreasonable inferences, unwarranted deduction of fact, or conclusory legal allegations" may be rejected in 12(b)(6) motion).

    2. <u>Motion to Dismiss</u>

In the alternative, the motion to dismiss filed by Ms. Ammann is granted.

        a. <u>Abuse of Process</u>

Ms. Chang claims that Ms. Ammann abused process by getting the first attorney (Mr. Allen) that Ms. Chang hired (1) to amend the complaint against the Rockridge individuals, without Ms. Chang's knowledge or consent, to add the Homeowners Association as a defendant, *see* FAC ¶ 43, and (2) to file a separate assault/battery action against Ms. Celaya instead of just amending the complaint against the Rockridge individuals. *See* FAC ¶ 48.

The abuse-of-process claim is time barred. The statute of limitations for such a claim is two years. *See* Cal. Code Civ. Proc. § 335.1 (providing for a two-year statute of limitations for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"). Ms. Chang did not file the instant lawsuit until August 3, 2007. Thus, the allegedly wrongful conduct by Ms. Ammann had to have occurred by August 3, 2005, in order to be actionable. Based on the allegations in the FAC, Ms. Ammann's corrupting of Ms. Chang's attorney took place well before August 3, 2005, as the attorney filed the amended complaint adding the

Homeowners Association as a defendant in October 2001, *see* FAC ¶ 43, and filed the separate lawsuit against Ms. Celaya in April 2002. *See* Docket No. 30 (Univ. Defs.' RJN, Ex. A)).

The Court acknowledges Ms. Chang's allegation that she was not aware of any corruption until April 2005, when she first learned of the fact that the attorney (Mr. Allen) had filed an amended complaint in the case against the Rockridge individuals. *See* FAC ¶¶ 27, 45. But this allegation does not overcome the statute-of-limitations defense. April 2005 still precedes the limitation period which commenced on August 3, 2005. Moreover, even though Ms. Chang claims that she was not aware of the amended complaint, which added the Homeowners Association, until April 2005, the fact remains that the release she signed in February 2005 clearly covered the Homeowners Association. Thus, Ms. Chang should have been aware of any alleged corruption by at least February 2005.[2]

Even if the abuse-of-process claim were not time barred, it would still be subject to dismissal for the reasons stated in the Court's prior order of February 13, 2008. *See* Docket No. 110 (Order at 14-15). Ms. Chang's contention is, in essence, that there was a conspiracy between Ms. Ammann and Ms. Chang's attorney but, as previously held, this contention is not plausible, is based on sheer speculation, and is patently insubstantial. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level" and that that must be "plausible grounds" to support a claim for relief"); *Rice*, 2003 U.S. Dist. LEXIS 22860, at *2-3 (dismissing "patently insubstantial" complaint). In fact, the attorney's decision to file a separate complaint against Ms. Celaya, rather than joining her to the action against the Rockridge individuals, was probably required under California law, and therefore not proof of a conspiracy with Ms. Ammann. California Code of Civil Procedure § 379(a)(1) allows for permissive joinder of defendants if a plaintiff can assert against all of them a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences." Cal. Code Civ. Proc. § 379. On its face, the alleged assault/battery by Ms. Celaya was entirely separate from the alleged wrongdoing by the Rockridge individuals, which was based on the telephone call that

---

[2] In her opposition, Ms. Chang claims that she first discovered the "fraud" that had been perpetrated on May 18, 2005. *See* Opp'n at 6. Again, this date still precedes August 3, 2005.

6

1  Ms. Ammann had made to the police about Mr. Sun having a gun.  Therefore, Ms. Chang's attorney

2  appropriately informed her that he would file a separate complaint against Ms. Celaya and then

3  conduct discovery to prove a conspiracy after which he would consolidate the two complaints.  *See*

4  FAC ¶ 31.

### b. Violation of the Unruh Civil Rights Act

Ms. Chang also contends that Ms. Ammann violated the Unruh Civil Rights Act, *see* FAC ¶ 44, which provides in relevant part that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.

Ms. Chang has failed to show that she has standing to assert a disability-based claim under § 51.  She claims no disability herself.  Her son, who does, has been dismissed.

### c. Violation of California Business & Professions Code § 17200

Ms. Chang further claims that Ms. Ammann violated her rights pursuant to California Business & Professions Code § 17200.  The allegations supporting the § 17200 claim seem to be the same as those supporting the § 51 claim.  *See* FAC ¶¶ 44-45.

Ms. Chang has failed to state a claim for relief under § 17200.  The statute provides a remedy for unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The FAC does not contain any allegations suggesting that Ms. Ammann engaged in unfair competition.  To the extent Ms. Chang suggests that Ms. Ammann engaged in an unlawful business act because her actions violated § 51, the claim must fail for the reasons stated above.

### d. Fraud and Misrepresentation

Ms. Chang maintains that Ms. Ammann also violated her rights by deceiving her in the case she and Mr. Sun filed against the Rockridge individuals (which included Ms. Ammann as a defendant).  *See* FAC ¶ 46.  Ms. Chang, however, has failed to point to any misrepresentation by Ms. Ammann, and thus has failed to state a claim for relief.  *See Robinson Helicopter Co., Inc. v.*

7

*Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (listing the elements of a fraud claim, the first of which is a misrepresentation).

To the extent Ms. Chang contends that Ms. Ammann concealed a conspiracy with Plaintiffs' attorney (Mr. Allen), that does not mean -- as the Court noted in its previous order -- that she thereby has "a cause of action for fraud -- otherwise all conspiracies would be frauds. The concealment of the conspiracy is only relevant to the issue of when [a] claim[] related to the conspiracy would accrue." Docket No. 110 (Order at 13) (citing *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 638 (2007) ("A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable.")). Moreover, any allegation based on a conspiracy between Ms. Ammann and Ms. Chang's attorney is, as noted above, entirely speculative and patently insubstantial.

e.  <u>Intentional Infliction of Emotional Distress</u>

Finally, Ms. Chang asserts a claim for intentional infliction of emotional distress against Ms. Ammann based on the allegation that Ms. Ammann corrupted Ms. Chang's attorney (Mr. Allen). *See* FAC ¶ 47. Like the above claims, this claim fails because the alleged corruption of the attorney is not plausible and patently insubstantial.

B.  <u>University Defendants</u>[3]

In the FAC, Ms. Chang asserts the following causes of action against the University Defendants: (1) violation of § 1983; (2) abuse of process; (3) negligence; and (4) fraud and misrepresentation. The University Defendants have moved to dismiss the complaint or, in the alternative, for summary judgment. *See* Docket No. 131.

---

[3] The University Defendants are collectively Mr. Birgeneau, Ms. Von Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya. As alleged in the original complaint, Mr. Birgeneau is the chancellor of the University, Ms. Von Seeburg the University general counsel, *see also* Von Seeburg Decl. ¶ 1 (stating that she is a University counsel in the Office of the General Counsel), Ms. Harrison the University Police Department chief, *see also* Harrison Decl. ¶ 1 (stating that she is the University chief of police), and Mr. Tejada and Ms. Celaya employees in the University Police Department. *See also* Tejada Decl. ¶ 1 (stating that he is a lieutenant in the University Police Department); Celaya Decl. ¶ 1 (stating that she is a dispatcher in the University Police Department).

8

### 1. Section 1983 Violation

Ms. Chang's § 1983 claim has two components. First, Ms. Chang contend that Ms. Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya violated her civil rights by making ex parte communications with Judge Castellanos, the presiding judge in the lawsuit that Ms. Chang and Mr. Sun filed against Ms. Celaya. *See* FAC ¶ 49. Second, Ms. Chang contends that her civil rights were violated because Mr. Birgeneau threatened students trying to serve the original complaint on campus with suspension of their student status and because Mr. Birgeneau and Ms. Harrison would not allow Ms. Chang to park on the University campus so that she could serve the original complaint. *See* FAC ¶ 51.[4]

#### a. Ex Parte Communications

"'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *West Coast Theater Corp. v. Portland*, 897 F.2d 1519, 1527 (9th Cir. 1990). Ms. Chang not expressly identified what right protected by federal law was violated due to the alleged ex parte communications by Ms. Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya. Even if the Court construed the violated federal right as the right, *e.g.*, to due process, a due process claim requires that there be a deprivation of a constitutionally protected liberty or property interest. *See Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.") (internal quotation marks omitted); *Foley v. Bates*, No. C 06-7294 PJH, 2007 U.S. Dist. LEXIS 27390, at *33 (N.D. Cal. Mar. 30, 2007) ("As a threshold matter, '[t]o establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property.' A substantive due process claim can be stated through allegations that the action was 'arbitrary and irrational and had no relationship to a legitimate government objective.'"). Here, Ms. Chang claims that she was

---

[4] In her opposition, Ms. Chang suggests that her civil rights were also violated because the University Defendants were deficient in their training of Ms. Celaya and failed to take action on her complaint about Ms. Celaya. The Court shall not consider this new theory as it is beyond the scope of the FAC, and Ms. Chang has not made any motion to amend her complaint.

deprived of a property interest as a result of the ex parte communications, *see* FAC ¶ 49, but she has failed to identify what that property interest is. Nor does she allege how the alleged communications with Judge Castellanos resulted in any prejudice or injury to her. Accordingly, the Court concludes that Ms. Chang has failed to state a claim for relief under § 1983 based on the alleged ex parte communications.

Even if Ms. Chang adequately stated a claim for relief under § 1983, dismissal is still appropriate based on the University Defendants' alternative motion for summary judgment. Ms. Seeburg, Ms. Harrison, and Mr. Tejada have each submitted declarations in which they testify that they have never had any communications at all with Judge Castellanos. *See* Von Seeburg Decl. ¶ 2 ("I have never had communication, either verbal or written, with Judge Cecilia Castellanos concerning Plaintiffs or C. Peppers Celaya."); Harrison Decl. ¶ 2 (same); Tejada Decl. ¶ 2 (same). Ms. Chang has not offered any evidence to the contrary, nor has she made a request pursuant to Federal Rule of Civil Procedure 56(f), stating that she needs additional time to collect evidence to oppose the summary judgment motion. Thus, Ms. Von Seeburg, Ms. Harrison, and Mr. Tejada are each entitled to summary judgment on this part of the § 1983 claim.

As for Ms. Celaya, she clearly has had communications with Judge Castellanos as Ms. Celaya was a litigant in the state court proceeding before the judge. But, as reflected in Ms. Celaya's declaration, the only communication with the judge to which Plaintiffs were not privy was when Ms. Celaya gave the judge a document at a hearing in which Ms. Chang was present. *See* Docket No. 49, at 15 (Pls.' Ex. 2.5); *see also* Celaya Decl. ¶ 3. Although Ms. Chang does not appear to have actually seen the document, she was informed what the subject matter of the document was. *See* Docket No. 49, at 15 (Pls.' Ex. 2.5) (Ms. Celaya testifying that "this is from my lieutenant saying what kind of training I had in self-defensive tactics and things like that"). Based on these facts, the Court cannot discern any cognizable due process violation. Thus, Ms. Celaya is entitled to summary judgment on this part of the § 1983 claim.

The Court acknowledges Ms. Chang's claim that there was at least one other ex parte communication between Judge Castellanos and Ms. Celaya. More specifically, Ms. Chang claims that there was a communication between the two because, at the conclusion of a state court hearing

on September 16, 2005 -- held to address Ms. Chang's request for a different judgment in her favor in the Celaya lawsuit -- Judge Castellanos asked Ms. Celaya "to stay around until after they [*i.e.*, Ms. Chang] leave." Docket No. 49 (Pls.' Ex. 2.5) (Tr. at 17). No reasonable juror, however, could find that Judge Castellanos detained Ms. Celaya in order to conduct ex parte communications. The transcript read as a whole reflects that Judge Castellanos asked Ms. Celaya "to stay around" because the judge was concerned about a possible altercation between Ms. Celaya and Ms. Chang, particularly in light of Ms. Celaya's claims that Ms. Chang had been harassing her.[5] Moreover, by

---

[5] For example, at the beginning of the hearing, Judge Castellanos asked Ms. Celaya whether she had been served with the motion for reconsideration filed by Ms. Chang and Mr. Sun. Ms. Celaya confirmed that she had been served and then added: "Well, what happened was she came to my job twice or sent someone to my job, which caused some problem for me at my job." Docket No. 49 (Pls.' Ex. 2.5) (Tr. at 2). After Ms. Chang made a comment about service, the judge responded:

> Okay. Well, it's fine. Mrs. Celaya is here.
>
> Now before we get into the merits, Mrs. Celaya, there is a way that you can apply for a civil restraining order if you think that Mrs. Chang is harassing you. So you can go to room 250 in the RCD main building and you can make application and you might be granted a temporary restraining order to prevent her from going to your job. If there's any issues of civil harassment on the part of Mrs. Chang, you can do that. All right.

*Id.* (Pls.' Ex. 2.5) (Tr. at 3).

Toward the end of the hearing, Ms. Chang argued that "it is unfair and unjust and outrageous that [Ms. Celaya] one day may decide to seek for damages from us," *id.* (Pls.' Ex. 2.5) (Tr. at 15), to which Ms. Celaya responded:

> Your Honor, I totally reject the last statement that she made. I find this totally absurd. I have been called -- I understand you have a right to come to court. I've come to court to defend myself. I've been called from my job on four separate occasions to answer these charges. I'm not seeking anything from her but for her to go away and leave me alone. She's trying to get me. I'm not trying to get her.

*Id.* (Pls.' Ex. 2.5) (Tr. at 16). The judge in turn stated:

> Mrs. Chang, I would advise you not to harass Mrs. Celaya. Let me tell you why -- and not call her at work, deliver papers at work because she is capable of getting a restraining order against you and your son if a judge agrees you're harassing her. So you need to stay away from her to keep the peace between the two of you. All right. Now, that's friendly advice on my part. All right. Because otherwise she's going to get a restraining order to keep you away from her.

*Id.* After a few more comments to Ms. Chang about moving on with her life, Judge Castellanos then

11

this time, Judge Castellanos had already indicated that Ms. Chang's request for reconsideration would more than likely be denied. *See id.* (Pls.' Ex. 2.5) (Tr. at 17).

### b. Interference with Service of Complaint

As noted above, Ms. Chang also asserts a § 1983 claim based on the allegations that (1) Mr. Birgeneau threatened students trying to serve the original complaint on campus with suspension of their student status and (2) Mr. Birgeneau and Ms. Harrison would not allow Ms. Chang to park on the University campus so that she could serve the original complaint. Ms. Chang contends that these actions constitute a violation of due process. *See* FAC ¶ 51.

Ms. Chang has failed to state a claim for relief under § 1983. First, Ms. Chang does not have standing to assert any interest that the students have in their status as students. Second, although Ms. Chang may have a protectible interest in her lawsuit, she was never deprived of that interest as there is no dispute that the complaint was ultimately served. Third, as the University Defendants point out, while Ms. Chang was cited for a parking violation, being cited for such a violation does not rise to the level of a procedural due process violation where there is a process in place to contest the citation, and Ms. Chang has not asserted that there is no such process. *See generally Tyler v. County of Alameda*, 34 Cal. App. 4th 777 (1995).

For the same reasons, dismissal is appropriate based on the University Defendants' alternative motion for summary judgment. Moreover, Ms. Harrison is entitled to summary judgment as she has submitted a declaration -- which is not refuted by Ms. Chang -- that she has never had a communication with a traffic enforcement officer about Ms. Chang or instructed such an officer to cite Ms. Chang with a parking ticket. *See* Harrison Decl. ¶ 3 ("[A]t no time did I have any communications with any traffic enforcement officer about Ms. Chang and at no time did I ask or

---

stated:

> So I'm going to adjourn the case and I will look at your paperwork one more time, but I don't want you to hope that I'm going to change my mind. I probably will not change my mind, and it is more likely than not that I will deny your motion. And Mrs. Celaya, if you could stay around until after they leave.

*Id.* (Pls.' Ex. 2.5) (Tr. at 17).

instruct any traffic enforcement officer to cite Ms. Chang with a parking ticket while on the U.C. Berkeley campus.").

### 2. Abuse of Process

According to Ms. Chang, Ms. Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya each engaged in abuse of process by making ex parte communications with Judge Castellanos (including the submission of documents), the presiding judge in the assault/battery case against Ms. Celaya. *See* FAC ¶ 50. Ms. Chang has failed to state a claim for abuse of process. As noted in the Court's prior order, to succeed in an action for abuse of process, a litigant must establish that the defendant "'(1) contemplated an ulterior motive in using the [court] process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings.'" Docket No. 110, at 22 (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006)). Ms. Chang has not made any allegations that any of the defendants contemplated an ulterior motive in using the court process.

Moreover, dismissal is appropriate, for the reasons stated by the Court in Part III.B.1.a, *supra*, based on the University Defendants' alternative motion for summary judgment. That is, there is undisputed evidence that Ms. Von Seeburg, Ms. Harrison, and Mr. Tejada have never had any communications with Judge Castellanos, ex parte or otherwise. At best, Ms. Celaya may have had one communication with Judge Castellanos to which Ms. Chang was not completely privy. Because Ms. Chang was present when the communication took place and was informed of the subject matter of the communication, no reasonable juror could find that Ms. Celaya misused the power of the court to perpetrate an injustice. *See Rusheen*, 37 Cal. 4th at 1057 ("'[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.'").

### 3. Negligence

Although not entirely clear, it appears that Ms. Chang is asserting a claim for negligence against the University Defendants other than Ms. Celaya based on conduct by Ms. Celaya -- *i.e.*, her alleged assault/battery of Ms. Chang and Mr. Sun and her alleged lying during the trial in the assault/battery case. Ms. Chang claims that the University Defendants are liable for Ms. Celaya's conduct based on a respondeat superior theory. *See* FAC ¶ 52.

13

The negligence claim is barred by the statute of limitations. As with the claim for abuse of process, the negligence claim has a two-year statute of limitations. *See* Cal. Code Civ. Proc. § 335.1 (providing for a two-year statute of limitations for "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"). Ms. Chang did not file the instant lawsuit until August 3, 2007. Thus, the allegedly wrongful conduct by Ms. Celaya -- for which the University Defendants are purportedly liable on a respondeat superior theory -- had to have occurred by August 3, 2005, in order to be actionable. Based on the allegations in the FAC, Ms. Celaya assaulted and battered Ms. Chang and Mr. Sun in December 2001, *see* FAC ¶ 20, and the trial during which she allegedly lied took place in August 2004, *see* Docket No. 49 (Pls.' Ex. 1.2) -- both well before August 3, 2005.

In addition, limitations problems aside, Ms. Chang has failed to state a claim for relief. First, it is not clear that the University Defendants could be held liable on a respondeat superior theory for Ms. Celaya's intentional acts because the University, and not the individuals themselves, was Ms. Celaya's employer. *See* Black's Law Dictionary 1313 (7th ed. 1999) (stating that respondeat superior is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency"). Second, even if the University Defendants could be held liable on a respondeat superior theory, respondeat superior liability would only obtain if Ms. Celaya had committed the intentional acts in the scope of her employment. The FAC fails to establish such. Indeed, there is no allegation that Ms. Celaya's actions -- allegedly assaulting/battering Ms. Chang and Mr. Sun in the condominium where both she and Plaintiffs lived and allegedly lying in a lawsuit in which she was sued as an individual only -- had any connection with her employment with the University. *See Bailey v. Filco, Inc.*, 48 Cal. App. 4th 1552, 1560 (1996) ("Respondeat superior liability demands a nexus between the employee's tort and the employment to ensure that liability is properly placed upon the employer.").

### 4. Fraud and Misrepresentation

Finally, Ms. Chang alleges a claim for fraud and misrepresentation against Ms. Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya based on their alleged withholding from Ms. Chang ex parte

communications with Judge Castellanos.[6]  Ms. Chang has failed to state a claim for relief.  As the Court held in its previous order, Ms. Chang has failed to allege in the FAC that Ms. Seeburg, Ms. Harrison, Mr. Tejada, and Ms. Celaya ever made a misrepresentation.  Docket No. 110, at 23 ("[Plaintiffs] have not alleged that the University employees ever made a false representation or concealment of any kind.  All that the employees purportedly did was refuse to produce documents subpoenaed by Plaintiffs . . . .  But the remedy for the University employees' action was for Plaintiffs to move to compel the documents in the state court proceeding . . . .").

Even if there were such an allegation, dismissal is still proper based on the University Defendants' alternative motion for summary judgment.  Ms. Von Seeburg, Ms. Harrison, and Mr. Tejada have all declared that they have never had any communications with Judge Castellanos, ex parte or otherwise.  Ms. Chang has not offered any evidence to the contrary.  In addition, as to Ms. Celaya, the only evidence of any such communication is arguably one communication with Judge Castellanos.  Ms. Chang was present when the communication took place and was informed of the subject matter of the communication.  While Ms. Chang alleges the communication concerned a document not shown to her, there is no evidence that Ms. Celaya made a misrepresentation to Ms. Chang in connection with this communication.

C.   Ms. Zimba

Ms. Chang asserts two causes of action against Ms. Zimba: (1) abuse of process and (2) fraud and misrepresentation.  Ms. Chang alleges that Ms. Zimba engaged in abuse of process by taking action in the lawsuits against the Rockridge individuals and Ms. Celaya to benefit the defendants rather than Ms. Chang and her son -- *e.g.*, failing to consolidate the two lawsuits, failing to secure appointment of a guardian ad litem for Mr. Sun, and obstructing appeal of the final judgment in the case against Ms. Celaya.  *See* FAC ¶ 52.  According to Ms. Chang, Ms. Zimba took such action to assist Ms. Celaya, the University, and the Homeowners Association.  *See* FAC ¶¶ 34, 37, 42, 52.  Ms. Chang also asserts a claim for fraud and misrepresentation against Ms. Zimba based

---

[6] In her opposition, Ms. Chang suggests that Ms. Celaya also engaged in fraud by conspiring with Ms. Chang's attorney.  The FAC, however, limits the fraud claim to the communications with Judge Castellanos.  Moreover, the alleged conspiracy is not plausible.

on the following: (1) her alleged framing of Ms. Chang and Mr. Sun as the assailants, rather than Ms. Celaya, during the trial in the assault/battery case against Ms. Celaya; (2) her alleged extortion of legal fees from Ms. Chang and Mr. Sun because she had no intention to represent them honestly; and (3) her alleged lie that the judgment in the assault/battery case was a nonsuit when it was actually a judgment in favor of Ms. Celaya with a "'remedy available to [her].'"[7] FAC ¶ 53.

Ms. Zimba has moved to dismiss both of the claims for lack of subject matter jurisdiction and for failure to state a claim for relief. *See* Docket No. 146.

The Court must first address Ms. Zimba's contention that it lacks subject matter jurisdiction over the claims asserted against her. As Ms. Zimba points out, the instant case is in federal court based solely on the federal claims asserted against the University Defendants. As there is no diversity jurisdiction, Ms. Chang is asserting that this Court has supplemental jurisdiction over the state law claims against Ms. Zimba. Ms. Zimba argues that supplemental jurisdiction does not exist pursuant to 28 U.S.C. § 1367(a), which provides in relevant part that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added).

"A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). The Court acknowledges that Ms. Zimba's position is not without some merit. The federal claims against the University Defendants are related to (1) alleged ex parte communications between the University Defendants and Judge Castellanos in the assault/battery case against Ms. Celaya and (2) alleged interference by some of the University Defendants with Plaintiffs' service of the summons and complaint in the instant case. These claims have nothing to do with Ms. Zimba specifically. However, the Court

---

[7] In her opposition, Ms. Chang makes additional allegations about specific lies that Ms. Zimba made -- *e.g.*, lies related to the testimony by an expert and lies about the likelihood of success on the merits. But the FAC limits the fraud claim to the allegations described above.

concludes that the claims against Ms. Zimba arguably share a common nucleus of operative fact with the federal claims against the University Defendants and the state and federal claims would normally be tried together in light of Ms. Chang's theory that Ms. Zimba engaged in abuse of process and fraud/misrepresentation in the attempt to assist, *inter alia*, the University, which was involved with the lawsuit against Ms. Celaya. The Court notes, however, that the thread that ties the state and federal claims is thin.

Ms. Zimba argues, however, that, even if the Court has supplemental jurisdiction pursuant to § 1367(a), the Court may still decline that jurisdiction pursuant to § 1367(c). That provision states as follows:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Because the Court has now dismissed the federal claims against the University Defendants, the question for the Court is whether it should decline supplemental jurisdiction under § 1367(c)(3).

"In the usual case, if all jurisdiction-conferring claims are eliminated before trial, the underlying values to be considered under the supplemental jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over remaining state law claims." 16-106 Moore's Fed. Prac. -- Civ. § 106.66[2]. In the instant case, the litigation is almost a year old and the Court has undoubtedly committed judicial resources to moving the case forward. On the other hand, the Court has not committed *substantial* resources. The case is relatively early in the proceedings, and no trial date has been set. Little resources have been devoted by the Court to the state claims brought against Ms. Zimba. Moreover the state claims against Ms.

17

Zimba are distinct from and predominate over her federal claims (now dismissed) against Ms. Zimba.

Accordingly, the Court exercises its discretion and declines supplemental jurisdiction over the state law claims asserted against Ms. Zimba (*i.e.*, abuse of process and fraud/misrepresentation).

D.     Mr. Coombes

Finally, Ms. Chang asserts claims for abuse of process and fraud/misrepresentation against Ms. Coombes. Ms. Chang maintains that Mr. Coombes engaged in abuse of process because he was actually Ms. Zimba's "superior," FAC ¶ 40, and as such directed Ms. Zimba to frame Ms. Chang and Mr. Sun as the assailants in the case against Ms. Celaya in order to absolve the Rockridge Manor Homeowners Association, Ms. Celaya, and the University from liability. *See* FAC ¶¶ 42, 54. Ms. Chang further maintains that Mr. Coombes engaged in fraud because he allegedly "orchestrated the deceit against Plaintiffs in the assault/battery action." FAC ¶ 55.

Mr. Coombes has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim for relief. *See* Docket No. 130.

As above, the Court must first assess the issue of subject matter jurisdiction. The supplemental jurisdiction analysis above, *see* Part III.C, *supra*, is applicable here. That is, while the Court does have (by a thin thread) supplemental jurisdiction of the claims against Mr. Coombes pursuant to § 1367(a), it declines to exercise jurisdiction pursuant to § 1367(c)(3) for the same reasons discussed above.

### III.     CONCLUSION

For the foregoing reasons, each of the motions challenging the FAC is granted. Ms. Ammann and the University Defendants are both entitled to summary judgment, and therefore the case as to them is now closed. As to Ms. Zimba and Mr. Coombes, the Court shall decline supplemental jurisdiction over the state law claims asserted against them pursuant to § 1367(c)(3). The Court advises Ms. Chang that, pursuant to § 1367(d), "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the

claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).

The Clerk of the Court is directed to enter judgment consistent with this order and close the file in this case.

IT IS SO ORDERED.

Dated: July 3, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CHANG, *et al.*, | No. C-07-4005 EMC |
| Plaintiffs, | |
| v. | **CERTIFICATE OF SERVICE** |
| ROCKRIDGE MANOR CONDOMINIUM, *et al.*, | |
| Defendants. _____/ | |

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Christine Chang
341 Tideway Drive #214
Alameda, CA 94501

*ALL OTHER COUNSEL SERVED VIA ELECTRONIC FILING*

Dated: July 3, 2008        RICHARD W. WIEKING, CLERK

By: _____/s/_____
Leni Doyle
Deputy Clerk